[Civ. No. 4196. First Appellate District, Division One.—January 5, 1923.]

## WILLIAM YRACEBURN et al., Respondents, v. J. C. CAPE, Appellant.

[1] CLAIM AND DELIVERY — COUNTERCLAIM FOR DAMAGES — ISSUES — GENERAL FINDING.—In this action in replevin for the recovery of the possession of certain sheep, with damages for their wrongful taking and detention by the defendant, in which the defendant presented a counterclaim for damages for the trespass of said sheep upon his lands and also for a further sum to which he alleged himself to be entitled for the impounding and custody of said sheep under the estray laws, the finding of the trial court that

all of the allegations of plaintiffs' complaint were true amounted to a finding that plaintiffs' possession of the sheep was rightful at the time of the defendant's taking of the same into his possession and that said sheep were not estrays, and such finding was sufficient in form to cover every issue of fact presented by the averments of the complaint and counterclaim.

[2] ID.—PLEADING—COUNTERCLAIM FOR DAMAGES FOR TRESPASS.—In an action in replevin for the recovery of the possession of certain sheep, with damages for their wrongful taking and detention by the defendant, a counterclaim for damages for the trespass of the sheep upon the defendant's real estate is not permissible.

[3] ID.—RIGHT OF POSSESSION OF LAND—ESTRAYS.—The trial court having found, upon conflicting evidence, that the defendant was not entitled to the possession of the premises upon which he claimed the plaintiffs' sheep were trespassing, the defendant had no right to take up and impound said sheep under the estray laws.

[4] ID.—ESTRAYS—EVIDENCE.—The evidence having shown that up to a very short while before the defendant undertook to impound the sheep of plaintiffs said sheep had been in the immediate custody of plaintiffs' herder upon adjoining lands which was not fenced and to the possession of which plaintiffs were entitled, that while the vigilance of the herder was temporarily relaxed some of the sheep crossed the unfenced boundary line to the lands claimed by defendant, whereupon the employees of defendant, over the protest of plaintiffs' herder and while a portion of the sheep were still upon the plaintiffs' premises, took possession of the entire band, the trial court was justified in finding that said sheep at the time of their attempted impounding by the defendant were not "estrays" within the meaning of the act of 1915, under the provisions of which defendant claimed the right to so impound said sheep.

[5] ID.—ANIMALS IN CHARGE OF HERDER—ESTRAYS.—Animals are not to be classified as estrays or as animals running at large within the meaning of the distraint statutes when such animals are in charge of a herder.

APPEAL from a judgment of the Superior Court of Fresno County. J. E. Woolley, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fulstone & Rogers for Appellant.

W. D. Crichton for Respondents.

5. Meaning of term "estray" as applied to animals, notes, 9 **Ann.** Cas. 284; **Ann. Cas.** 1912B, 1081.

RICHARDS, J.—This is an action in replevin for the recovery of the possession of about 690 sheep, with damages for their wrongful taking and detention by the defendant. The complaint is in the usual form in such actions, alleging that on a certain date in January, 1921, the plaintiffs were the owners and entitled to the possession of said sheep and that thereafter, and while the said plaintiffs were so entitled to the same, the defendant wrongfully and without plaintiffs' consent came into the possession of said personal property, and still retains the same and refuses to deliver the same to the plaintiffs upon their demand, to their damage in the sum of $1,000. The value of the sheep so taken and so held is alleged to be the sum of $8,625, for which sum, together with such damages, plaintiffs pray alternative judgment in case the possession of said property cannot be obtained. The answer of the defendant consists of specific denials of the possession or right of possession of said sheep or any of them on the part of said plaintiffs; denies that their value is a sum in excess of $1,500; denies any wrongful taking or possession of the said property or the detention thereof to the plaintiffs' damage in any sum whatever. The defendant then proceeds to allege that on the date in January, 1921, alleged as the date of his wrongful taking of said property, he found said sheep trespassing and estrays upon certain real property then in his possession, and that he then and there took up and impounded said sheep under and by virtue of the estray laws of the state of California, and became and thereafter continued to be lawfully entitled to the custody and possession of the same for the satisfaction of his lien thereon thus acquired. The defendant also presented a counterclaim for damages in the sum of $400 for the trespass of said sheep upon his said lands, and also for the additional sum of $931.50, to which sum he alleged himself to be entitled for the impounding and custody of said sheep under the estray laws. To this counterclaim the plaintiffs filed an answer denying all of its averments and praying that the defendant take nothing thereby. The cause came before the court, sitting without a jury, for trial upon the issues thus framed, and upon the conclusion thereof the court made its findings of fact and conclusions of law. The findings of fact were brief and were in the following form: "The court finds that all of the allegations

in plaintiffs' complaint are true and sustained by the evidence. The court further finds that all the said sheep and lambs described in plaintiffs' complaint, at the time they were taken up by the defendant, were not estrays." As its conclusions of law from the foregoing findings of fact the trial court found that the plaintiffs were entitled to the possession of said sheep and to their costs, and entered its judgment accordingly. The court gave no alternative judgment, the sheep having been taken by the plaintiffs at the inception of the action under the provisions of the code relating to claim and delivery. The defendant's motion for a new trial was denied, whereupon he took and now prosecutes this appeal.

[1] The appellant's first contention is that the judgment must be reversed for the reason that the trial court had failed to find upon the material issues raised by the counterclaim. This contention is without merit for several sufficient reasons. The finding of the trial court that all of the allegations of the plaintiffs' complaint were true is sufficient in form to cover every issue of fact presented by its averments. (2 Hayne on New Trial and Appeal, Rev. ed. p. 1334.) It amounted, therefore, to a finding that the plaintiffs' possession of the property in question was rightful at the time of the defendant's taking of the same into his possession and that the defendant's taking possession and detention thereof were, and each of them was, therefore, wrongful. Being wrongful, such taking could not become the foundation for that portion of the defendant's counterclaim which is based upon the provisions of the estray laws, since it amounted, in effect, to a finding that the plaintiffs' sheep when so taken by the defendant were not estrays. [2] In so far as the defendant's counterclaim embraces a claim for damages for the trespass of the sheep upon the defendant's real estate, such counterclaim is not permissible in an action for replevin. (*Glide* v. *Kayser*, 142 Cal. 419 [76 Pac. 50].)

The contention of the defendant that the additional finding of the trial court that the plaintiffs' sheep at the time of his taking them up were not "estrays" was merely a conclusion of law may or may not be true, but in any event it is immaterial since the general finding of the trial court that the defendant's taking of said property was wrongful

amounting necessarily to a finding that said property was not liable to such taking and impounding as "estrays."

[3] The appellant's next contention is that the finding of the trial court, whether express or implied, to the effect that the plaintiffs' sheep at the time of the defendant's taking and impounding of the same were not "estrays," and is not sustained by the evidence in the case. As to this contention the evidence in the case is conflicting in two main aspects. The first of these relates to the right of the defendant to the possession of the premises upon which he claims the plaintiffs' sheep were trespassing and taken and impounded by him. The lands in that region are pasturage and unfenced lands, adaptable in the main only to the grazing of cattle and particularly of sheep. The defendant was not the owner of the lands to which he claims the right of possession, but based his claim of right thereto upon a lease which he had received from the owner for the previous year and which had expired upon the last day of December of that year; and upon an alleged verbal renewal of said lease through the payment of a certain sum as rental for the year 1921 to a relative of the owner of the land. He failed, however, to show any right in such person to either receive such rental or extend such lease, while, on the other hand, the owner of the land took the stand to testify that he had received no such rental and had authorized no such renewal of the lease, but on the contrary had leased the lands to a person other than the defendant for grazing purposes for the year 1921. From such conflicting evidence the trial court may well have found that the defendant was not entitled to the possession of the premises upon which he claims the plaintiffs' sheep were trespassing, in which event the defendant would have no right to take up and impound said sheep under the estray laws. (Stats. 1915, p. 636.) .

[4] The evidence is also conflicting as to whether at the time defendant took possession of the sheep they were "estrays" or were trespassing upon the premises claimed by the defendant. The evidence showed that up to a very short while before the defendant undertook to impound the sheep in question, they had been in the immediate custody of the plaintiffs' herder upon adjoining lands, to the possession of which the plaintiffs were entitled. The said herder. at the noon hour, had gone to his camp about a quarter of

a mile from where the sheep were feeding, but within sight of the same, to eat his noonday meal. While his vigilance was thus temporarily relaxed, some of the sheep crossed the invisible and unfenced boundary line between the lands of the plaintiffs and those claimed by the defendant, whereupon the defendant, who was watching the same through a spy-glass, sent two of his employees to take posesssion of and impound said sheep. While so doing and while as yet a portion of the sheep were still upon the plaintiffs' premises, the herder returned and objected to the taking, but was warned off by the defendant's employees with threats of violence. The entire band of sheep were then taken possession of and impounded by the defendant, who refused to deliver the same to the plaintiffs upon their demand without payment of damages and the statutory costs assessable upon the impounding of estrays. Plaintiffs thereupon commenced this action and took the sheep under claim and delivery. We are satisfied that upon this state of the evidence the trial court was justified in its finding to the effect that the said sheep at the time of their attempted impounding by the defendant were not "estrays" within the meaning of the act of 1915, under the provisions of which the defendant claimed the right to so impound said sheep.

[5] The term "estrays" at common law had the well-defined meaning of animals found wandering at large, whose ownership was unknown. (Bouvier's Law Dictionary, Rawles, 3d Rev., title "Estrays"; *Lyman* v. *Gepson,* 18 Pick. (Mass.) 422; *Walters* v. *Glatz,* 29 Iowa, 439; *Kinney* v. *Roe,* 70 Iowa, 509 [30 N. W. 776]; *Hardy* v. *Nye,* 63 N. H. 612 [3 Atl. 631]; *Shepard* v. *Hawley,* 4 Or. 206.) The state of California, from almost the inception of its legislative history, began the enactment of statutes having reference to animals which were estrays or were found wandering at large upon the highways or upon the lands of other persons than those of their owners. These were in the main special statutes varying in their application according to the varying state of development of the particular regions during the period of their emergence from pastoral into agricultural or horticultural conditions. The earliest act concerning estrays was adopted in 1851. (Stats. 1851, p. 299.) This act excepted from its operation a goodly number of the counties of the state, which, in so far as

they were settled at all, were chiefly pastoral. The act did not purport to define the term "estrays" but apparently adopted the common-law definition of that term, since the act made no provision for notice to nonowners, but, on the contrary, expressly required that the owner or owners of animals must be unknown. This act was from time to time amended or revised, retaining however, its essential features affecting the meaning of the term "estrays" by being given application to different sections of the state which were to be included or excepted from its operation according to their varying conditions, until the year 1897, when a new and general act relating to estrays was adopted (Stats. 1897, p. 198), and made applicable to the counties of the state generally. By the terms of section 9 of said act all other acts and parts of acts relating to estrays were expressly repealed. This act apparently gives to the term "estrays" as employed therein its common-law meaning of wandering animals whose ownership was unknown. Four years later this act was supplanted by the act of 1901 (Stats. 1901, p. 603), which act, however, in its original form undertook to work no change in the meaning of the term estrays, as employed therein. The act of 1901 was, however, amended in 1907, in an important respect. (Stats. 1907, p. 132.) The amendment then adopted provided that in the event the owner's mark or print upon the animal had been recorded or the owner of the animal or person in charge thereof was known to the finder, he should be notified of the fact that the animal had been impounded and where it was confined. The act of 1901 was again amended in an important particular in 1909 (Stats. 1909, p. 1079), by the insertion of, for the first time in the history of our state legislation on the subject, a definition of the word "estray" as follows. "Section 2. The word 'estray' as used in this act is intended to include all domestic animals that have strayed upon, or been found upon, lands other than those of their owner, or the public domain, or lands whose owner (or to which the person in possession thereof) has consented, may be passed over, or allowed to be entered on, by such animal." The act as thus amended remained in force until the year 1915, when it was again amended by the substitution of an entirely new set of sections for those embodied in the original act of 1901 and of its said amendment in 1909 and from

which substituted sections the definition of the term "estrays" as above quoted was omitted, and the term was apparently used in its original signification, with the exception that under the act of 1915 in order to constitute animals estrays it was not necessary that the ownership of such animals should be unknown to the person finding and impounding such animal. (Stats. 1915, pp. 636, 637.) In other respects the term "estrays" retains its original significance as having reference to animals found wandering at large outside of the premises and beyond the restraint of their owner. This would seem to be made clear by a consideration of the case of *Thompson* v. *Corpstein*, 52 Cal. 563, which concerned the application of certain statutes to the running at large of the stock on the highways of Santa Clara County. The act of March 18, 1874, entitled "An act concerning roads and highways in the county of Santa Clara," provided in section 37 thereof for the taking up by roadmasters of animals found pasturing or running at large upon the public highways in violation of an act entitled "An act to amend an act concerning estrays and animals found running at large in the county of Santa Clara, passed April 27, 1863, and which amendatory act was approved March 27, 1872." (Stats. 1873-74, pp. 453-464; Stats. 1863, p. 581; Stats. 1871-72, p. 580.) In applying these several statutes to the case then at bar the supreme court held that animals being driven along the highway in charge of a herder were not estrays or animals running at large within the meaning of said acts; and that this was true even though the herder had for the moment fallen asleep and to that extent released his vigilance over said animals. In the case of *Spect* v. *Arnold*, 52 Cal. 453, a quite similar question was presented to the court in construing an ordinance of the town of Colusa providing that it should be unlawful for certain designated kinds of cattle, including sheep, to run at large upon the streets, alleys, or public grounds of said town. The marshal of the town undertook to seize and impound the band of sheep which he claimed were running at large in violation of the ordinance. In an action brought to recover possession of the sheep by the owner thereof the undisputed evidence showed that the sheep were at the time in charge of a herder. The court held that they were not to be classed as animals run-

ning at large so as to be impounded under the terms of said ordinance. These two cases are in harmony with the doctrine declared in other jurisdictions to the effect that animals are not to be classed as estrays or as animals running at large within the meaning of the distraint statutes when such animals are in charge of a herder. (*Roberts* v. *Barnes,* 27 Wis. 422; *Weber* v. *Hartman,* 7 Colo. 13 [49 Am. Rep. 339, 1 Pac. 230] ; *Shepard* v. *Hawley,* 4 Or. 206, *Beeson* v. *Tice,* 17 Ind. App. 78 [45 N. E. 612, 46 N. E. 154] ; 9 Am. & Eng. Ann. Cas. 286 and notes.) These authorities would seem to have application to the facts of the case at bar and to have justified the finding of the trial court that the animals in question were not estrays at the time they were attempted to be taken and impounded by the defendant herein. Further light might be thrown upon this subject by a consideration of the evolution of the fence law statutes of this state as interestingly reviewed by Mr. Justice Hart in the case of *Blevins* v. *Mullally,* 22 Cal. App. 519 [135 Pac. 307], and as further considered in the case of *Davis* v. *Blasingame,* 40 Cal. App. 458 [181 Pac. 104], which latter case had special reference to the application of certain of these statutes to the county of Fresno. The case of *Montezuma Imp. Co.* v. *Simmerly,* 181 Cal. 722 [189 Pac. 100], was also a case involving the continued trespassing of stock upon the plaintiffs' premises as giving ground for an injunction to enjoin such trespasses. None of these cases, however, involve the application of the estray laws and we do not deem it necessary to go into a consideration of the statutes to which they refer, for the reason that in the instant case the defendant's sole claim of right to impound the plaintiffs' sheep is rested by both his pleadings and proof upon the claim that the plaintiffs' animals were estrays and were subject to be impounded by him under the estray laws of California; and for the further reason that there is at present no law upon our statute books permitting the impounding of trespassing animals which are not estrays, with the exception of those statutes which were expressly continued in force as to certain counties, by the terms of section 10 of the act of 1915, and which statutes have no reference or application to the county of Fresno. This being so the foregoing authorities sufficiently justify the findings and conclusion of the trial court that under

the facts as proven these animals were not, at the time of their taking by the defendant, estrays.

Judgment affirmed.

Tyler, P. J., concurred.