[Civ. No. 3565.   Fourth Dist.   Oct. 2, 1947.]

BIOLA COOPERATIVE RAISIN GROWERS ASSOCIATION (a Corporation), Appellant, v. CHRIS H. SCHEIDT, Respondent.

Lawrence W. Young for Appellant.

Irvine P. Aten and Aynesworth & Hayhurst for Respondent.

MARKS, J.—This is an appeal by plaintiff and cross-defendant from a judgment against it in favor of defendant and cross-complainant, based on an alleged breach of contract. This is a companion case of *Olson* v. *Biola et al.,* Civ. No. 3578, ▌(Cal.App.) [184 P.2d 742], this day decided, which we will refer to as the Olson case. Some of the pertinent facts are set forth in the opinion in that case and need not be repeated at length here.

Biola Cooperative Marketing Association (herein referred to as Biola) is a nonprofit cooperative marketing association organized under the laws of California. Defendant was a grower member of Biola and entered into a contract with Biola to process and pack its 1944 raisin crop. That contract and marketing agreement between Biola and its members are referred to and quoted from in the Olson case.

Raisins were delivered to defendant for processing between about November 1, 1944, and some time in February, 1945. Some of these raisins contained too high a moisture content to be processed. Defendant accepted delivery of these wet raisins without protest to the growers although he did inform the officers of Biola of their condition. He had knowledge of this condition at the time of their delivery. Defendant stopped his work of processing the raisins on March 1, 1945.

On April 9, 1945, plaintiff filed this action in claim and delivery and recovered possession of about 482 tons, 891 pounds of the unpacked raisins. Neither in his original pleadings nor otherwise at the time the raisins were taken by Biola did defendant demand the return of the raisins so plaintiff disposed of all of them.

The trial court found there was 1,305 tons of raisins delivered to defendant; that he packed out 783.4 tons and failed to pack out the tonnage already indicated of which 418¼ tons were too wet to process and about 70 tons were dry and could have been packed and sold. The evidence indicated there were about 80 tons of these dry raisins. These figures do not balance. The variance is explained by defendant as due to shrinkage during processing.

There was an amended cross-complaint which was amended and also supplemental amendments. This is also true of the answer of plaintiff. To save space we will refer to the variously amended cross-complaint as the cross-complaint and to the variously amended answer as the answer to the cross-complaint.

Plaintiff's complaint is in the usual form found in a claim and delivery action. Defendant denied that plaintiff was entitled to the possession of the raisins and asserted his right of possession under his packing contract with Biola dated October 20, 1944. (See Olson case.)

In his answer to the complaint defendant also alleged that all of the raisins were not packed by him because he and the officers of Biola "thought and believed the same were unpackable." He also asserted a lien on the raisins "so stored with defendant of the said 1944 crop for storage and preservation and for services rendered under said contract in the packing and shipping of the 1944 crop of raisins delivered by plaintiff and for the profits which defendant would have made upon the raisins which plaintiff prevented defendant from packing by taking possession thereof." Defendant also set up a summary of the report of the arbitrators referred to in the Olson case which showed the delivery of wet raisins by eight growers.

In his cross-complaint defendant sought damages from plaintiff for breach of contract by reason of the raisins being taken from his possession by plaintiff. He also sought recovery of various amounts allegedly due him for additional

services rendered plaintiff and for $1,870.65 due him on account of his own dry raisins delivered to Biola to equalize his payments with those received by other growers.

Defendant also alleged in his cross-complaint that Biola had "failed, neglected and refused to condition said raisins for packing and shipping; that by reason of the said failure of the plaintiff and cross-defendant to perform its agreement and deliver raisins fit for shipment defendant and cross-complainant has been damaged in loss of profits to be made in the packing and shipping thereof in the sum of $13.00 per ton, being the total sum of $6,271.79." This was denied in the answer to the cross-complaint where it was alleged "that said defendant complained to said plaintiff that said raisins contained too much moisture to permit their packing, and that said plaintiff offered to go into the packing house where said raisins were located and segregate any raisins that defendant thought contained too much moisture to permit their packing, and that defendant refused to allow said plaintiff, or any of its agents, to inspect said raisins to determine their moisture content, or to otherwise treat said raisins so that the moisture content thereof could be eliminated so as to permit their packing in the event that any of said raisins contained too much moisture to permit their packing."

There was no finding on the issue thus made except one to the effect that if defendant had been permitted to pack the raisins taken by plaintiff he would have made a net profit of $12 per ton or a total of $5,789.34.

It was also found that the raisins taken by plaintiff from defendant "had a value of at least $27.00 per ton, or a total value of $13,026.08." It is difficult to conclude that this finding means just what it says. All of the records, papers and files in the Olson case were by stipulation admitted in evidence in this case and it was found in the Olson case that the same raisins had a market value of about $190 per ton. If the quoted finding was intended to mean that defendant had a special interest in those raisins of $27 per ton, the amount of his packing charges, it does not say so.

The judgment awarded plaintiff nothing. It gave defendant judgment on his cross-complaint for damages in the principal sum of $5,789.34 for breach of contract, $1,870.65 due him for his raisins delivered to plaintiff to equalize his payments with those made to other growers, and a total of $184.49 for sundry items.

The judgment contained the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendant and cross-complainant have judgment against the plaintiff for the sum of $13,026.08, the value of the property wrongfully taken from the possession of defendant, to be held by defendant and cross-complainant until plaintiff shall have paid to defendant and cross-complainant the sum of $5,789.34, the amount of damages suffered by defendant for plaintiff's breach of contract; that said deposit need not be made if plaintiff shall pay said damages."

▮ Plaintiff objected to the filing of any cross-complaint and to the introduction of any evidence in support of its allegations on the ground that it was not a proper pleading in a claim and delivery action. In support of this position it cites the cases of *Lovensohn* v. *Ward,* 45 Cal. 8; *Hall* v. *Susskind,* 109 Cal. 203 [41 P. 1012]; *Glide* v. *Kayser,* 142 Cal. 419 [76 P. 50]; *Yraceburn* v. *Cape,* 60 Cal.App. 374 [212 P. 938]; *Normart* v. *Safer,* 67 Cal.App. 507 [227 P. 943], and *Steele* v. *Marlborough Hall Corp.,* 100 Cal.App. 491 [280 P. 380]. These cases lend support to the argument.

Since those cases were decided the scope of section 442 of the Code of Civil Procedure has been much broadened by amendments. (Stats. 1923, p. 756.) Now a defendant may file a cross-complaint "whenever the defendant seeks affirmative relief against any party, relating to or dependent upon the contract, transaction, matter, happening or accident upon which the action is brought, or affecting the property to which the action relates, . . ." The relief sought in the cross-complaint is sufficiently related to the contract and transaction upon which plaintiff's action is based and involves the same property so that it is now a proper pleading in this action. (*Dobbins* v. *Horsfall,* 58 Cal.App.2d 23 [136 P.2d 35].)

▮ All during the trial plaintiff repeatedly attempted to introduce evidence to the effect that Biola and some of its members sought permission of defendant to get possession of the wet raisins so that they could be dried or dehydrated at no cost to defendant and thus rendered fit for processing and marketing. Objections were sustained to practically all of these questions so that plaintiff was prevented from producing evidence to support the following which appears from the questions asked and proffer of proof made: That one and perhaps two growers requested that defendant permit him or them to remove the wet raisins and dry them at the

grower's expense; that defendant was requested to act as Biola's raisin inspector when the raisins were received at the packing house; that he segregate the raisins into three lots, (1) properly cured raisins, (2) raisins too moist for immediate stemming but which would dry naturally when in the packing house, and (3) raisins so wet that they required dehydration or disposition to a winery; that defendant refused to do these things; that at a special meeting of the membership of Biola at which defendant was present, a resolution was unanimously passed instructing E. Randolph, president of Biola, to have the wet raisins dehydrated at the expense of the grower delivering them including cartage charges; that defendant refused to let Mr. Randolph get the raisins to be dehydrated and threatened him with bodily injury if he touched them; that he threatened Biola with a lawsuit to prevent the removal of the wet raisins for dehydration; that a few days later Mr. Randoph and Mr. Drenth, secretary and manager of Biola, again sought to get the wet raisins for dehydration and met the same response from defendant; that defendant refused to let them inspect the raisins to determine their condition and refused both Biola and some of the growers permission to get possession of the wet raisins for curing.

The marketing agreement between Biola and its members required the growers to deliver raisins "properly cured and in good condition." Title to the raisins passed to Biola on delivery and acceptance at the packing house. (See Olson case.) Defendant received the wet raisins, knowing they were wet, without objection to any grower.

Defendant's packing contract with Biola ran until August 1, 1945, and under some circumstances until the next October 1st. No other time limit is in the agreement. He agreed to "perform said packing operations according to the instructions of the Association (Biola) and the specifications provided by the government in packing same." Thus it would seem that Biola reserved the right of general supervision over the packing operations and that the request of Biola for possession of the wet raisins for the purposes of dehydration was not unreasonable nor in violation of any contractual obligation existing between it and defendant. Biola should have been permitted to prove, if it could, that it attempted to protect itself and its members against serious loss by reason of wet raisins in the packing house.

Defendant alleged that he had fully performed all of the obligations of the contract on his part to be performed. The

trial court found this allegation to be true and also found that on April 9, 1945, after defendant had stopped his packing operations on March 1, 1945, there were 70 tons of dry raisins in the packing house fit for processing and sale which defendant failed to process and pack. This fact together with the proffered evidence which was excluded would have had a very important bearing on the question of performance or breach of the contract by defendant. If the defendant did breach his contract in material particulars it would have an important bearing on the final determination of the case. Under these circumstances we cannot regard the error in excluding this evidence as inconsequential.

Further, if all the evidence bearing on the subject be received, and if that evidence should establish that defendant breached his contract in important particulars, and if it could be shown that defendant's refusal to let Biola or its members dry the wet raisins was without legal justification, a new and different aspect of the case would be presented. We are not informed in this case (except through findings in the Olson case) what was done with the wet raisins other than the finding in this case that Biola had disposed of them before the trial. If defendant had permitted Biola to properly cure the wet raisins, and if they had been returned to defendant for processing, he would have suffered no damage, or very little damage, as he could have then packed them under his contract.

The cause must be returned for retrial when competent evidence bearing on these problems should be received and fully considered. A party should not be permitted to recover damages resulting from his own wrong if such a situation be established at the next trial.

■ As the case must be retried, it is desirable to comment on one question upon which counsel differ, namely, the legal effect of the report of the arbitration described in the Olson case. The fact of arbitration and a summary of the report of the arbitrators were pleaded by defendant as was its approval by the trial judge. He argues that this order approving the report was a judgment which became final when no appeal was taken from it. Plaintiff argues that the order was interlocutory and that as no appeal could be taken from it plaintiff was not estopped from disputing the effect of the finding.

The stipulation under which the arbitrators were appointed only empowered them to determine the quality of the raisins

delivered by the respective growers, that is, the quantity of dry and of wet raisins delivered. It did not empower the arbitrators to fix damages or loss to any one from the delivery of wet raisins and they did not attempt to do so. The only thing that was determined was that eight growers had delivered wet raisins in varying amounts. This certainly was not a final judgment from which an appeal could have been taken. (Code Civ. Proc., § 963; *Lyon* v. *Goss*, 19 Cal.2d 659 [123 P.2d 11]; *Heck* v. *Heck Bros.*, 57 Cal.App. 2d 599 [134 P.2d 853].) This matter is not too important at this time for we do not understand that Biola is maintaining that no wet raisins were delivered.

Judgment reversed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied October 29, 1947.