[Civ. No. 2704. Third Appellate District.—May 27, 1924.]

# P. M. NORMART, Appellant, v. JOHN SAFER et al., Respondents.

[1] EXECUTORS AND ADMINISTRATORS—FAILURE OF SURVIVING PARTNER TO CONTINUE IN POSSESSION OF PARTNERSHIP—DUTY OF EXECUTOR OR ADMINISTRATOR.—In case the surviving partner fails to exercise his right to continue in possession of the partnership for the purpose of settling its business, it is the duty of the executor or administrator of the estate of the deceased partner, as such, to take possession of the latter's interest in the partnership.

[2] AGENCY—AUTHORITY TO SELL CROPS—CONSTRUCTION OF WRITING.—Under a writing, signed by the owners of a crop, giving authority to an agent to sell the crop for a stated sum and finally providing that "If we fail to live up to our agreement, we agree to pay" said agent a specified sum, the agent's authority, by reason of the final provision of said writing, was limited to the finding of a purchaser of the property and not to the negotiation of the sale thereof to said purchaser except upon the consent of the owners of the crop.

[3] CLAIM AND DELIVERY—ALLEGED SALE OF CROPS TO PLAINTIFF—FINDINGS—APPEAL.—In this action of claim and delivery of certain crops claimed by plaintiff by reason of an alleged purchase thereof from an agent of the owners of said crops, the implied finding that the purported sale of the property to the plaintiff did not involve a *bona fide* transaction cannot be disturbed on appeal: in other words, the implied finding that no actual sale was made by said agent to the plaintiff is supported by all the circumstances of the case, or, at any rate, the evidence tending to support such finding is such as to preclude the appellate court from declaring that the decision of the trial court upon the question is erroneous.

[4] ID.—FRAUD—PLEADING—CREDIBILITY OF WITNESSES—PROVINCE OF TRIAL COURT.—In such action, the trial court, notwithstanding that the issue of fraud as to the alleged sale was not tendered by the answer of the defendant administrator, was authorized, for the purpose of determining the credibility of the witnesses or the weight to be attached to the testimony of certain witnesses as to said sale and whether the same was *bona fide* or involved a mere

---

1. Carrying on of partnership by representative of deceased partner, notes, 86 **Am. Dec.** 600; 79 **Am. St. Rep.** 709. See, also, 11 **Cal. Jur.** 1029; 20 **R. C. L.** 992.

3. See 2 **Cal. Jur.** 918; 2 **R. C. L.** 203.

4. See 28 **R. C. L.** 658.

pretext in order to secure advantage of said defendant's intestate, who was one of the owners of the property involved in said sale, to take into account all the circumstances characterizing the carrying out thereof.

[5] ID.—TESTIMONY AS TO SALE—REJECTION BY TRIAL COURT—PRESUMPTIONS—JUDGMENTS.—In such action, it is to be presumed on appeal, in support of the judgment in favor of defendant administrator, that the trial court rejected as untrue or as unworthy of belief the testimony of certain witnesses appearing to show that the purported sale to plaintiff was in fact a *bona fide* transaction.

[6] ID.—PURPOSE OF ACTION OF CLAIM AND DELIVERY—POSSESSION.— The purpose of the action of claim and delivery like the common-law writ of replevin, is to try the right to the possession of personal property or chattels, and, therefore, where a party claims the possession of movables and resorts to the action in claim and delivery to establish his claim, it is incumbent on him to prove that he is entitled to the immediate possession of the chattels or personal property, whatever may be the source of such claimed right. If in this he fails, so must his action fail.

[7] ID.—TITLE—POSSESSION.—In such action, plaintiffs claimed right to the possession of the property in controversy having been founded solely upon his alleged ownership thereof, and he having failed to establish his ownership of said property, with such failure his claim of right to the possession of the property also failed.

---

(1) 30 **Cyc.**, p. 622. (2) 2 **C. J.**, p. 592, sec. 229. (3) 4 **C. J.**, p. 879, sec. 2853. (4) 38 **Cyc.**, p. 1945. (5) 4 **C. J.**, p. 777, sec. 2726 (Anno.); 38 **Cyc.**, p. 1945. (6) 34 **Cyc.**, pp. 1354, 1386, 1387. (7) 34 **Cyc.**, p. 1508.

APPEAL from a judgment of the Superior Court of Colusa County. Ernest Weyand, Judge. Affirmed.

The facts are stated in the opinion of the court.

N. Lindsay South and Atram & Sheets for Appellant.

Alva A. King and Thomas Rutledge for Respondents.

HART, J.—This action is in claim and delivery. The complaint, which was filed on the twenty-first day of Sep-

---

5. See 2 **Cal. Jur.** 852 et seq.; 2 **R. C. L.** 219.

6. Title necessary to support replevin, note, 1 **Ann. Cas.** 984. See, also, 5 **Cal. Jur.** 160; 23 **R. C. L.** 864.

tember, 1922, alleges that the plaintiff was, at all times mentioned therein, the owner and entitled to the possession of four tons of Thompson Seedless and Sultana raisins and three tons of grapes of the same varieties, and also a crop of almonds, all of which were and are of the value of three thousand dollars; that within "one year last past," in the county of Colusa, without the consent of plaintiff, the defendants Crosby and Safer took and detained said personal property from the possession. of plaintiff; that plaintiff, prior to the commencement of this action, demanded of defendants possession of said personal property, that the latter have failed and refused and still fail and refuse to do so, and that they "still wrongfully withhold and detain said personal property, to the plaintiff's damage in the sum of $3,000."

The prayer is for the delivery of the possession of said property to plaintiff, or, in case said delivery cannot be had, that he have and recover judgment for the sum of three thousand dollars, the value thereof, etc. The defendant, Safer, failed to answer the complaint or otherwise make an appearance in the action within the time prescribed by law, and his default in that behalf was duly entered.

By leave of the court first had and obtained, the defendant, McNary, as administrator of the estate of the defendant Crosby, deceased, the latter having died subsequently to the commencement of this action, to wit, on September 30, 1921, filed an answer to the complaint. After stating that said Crosby died after the commencement of this action and that later said J. D. McNary was duly appointed administrator of the estate of said deceased and under an order of the court substituted as party defendant in the place and stead of said deceased, the answer denies positively or on information and belief all the allegations of the complaint, with the exception of that contained in paragraph 2 thereof. Paragraph 2 alleges that the personal property mentioned therein is of the aggregate value of three thousand dollars. The answer states that, on the twenty-third day of September, 1921, the plaintiff wrongfully and fraudulently took the property described in the complaint from the possession of said Norton K. Crosby under a claim of ownership; that the sheriff of Colusa County, under a provisional process issuing in this action and founded upon an affidavit and undertaking filed herein by the plaintiff, and pursuant

thereto, did, on the twenty-second day of September, 1921, take said personal property from the possession of the said defendant and thereafter delivered all of said property to the plaintiff; that, as administrator of the estate of said Crosby, deceased, the defendant, McNary, is entitled to the return and delivery to him of the possession of the whole of said property. The prayer of the answer is for a judgment that said property be delivered to said McNary, as administrator, etc., or that he as such administrator be awarded judgment for the sum of three thousand dollars, the value thereof, in case such delivery cannot be had.

The findings are in accord with the denials and averments of the answer, it being specifically found, as the complaint alleges and the answer admits, that the property described in the complaint was, at the time of the commencement of this action, of the value of three thousand dollars. The court further found that said Crosby, at the time of his death, was a resident of Colusa County and died in said county subsequent to the date of the filing of the complaint herein, that said J. D. McNary, at a date subsequent to the death of said Crosby, was, by proceedings duly had in the superior court in and for said county, regularly appointed administrator of the estate of said Crosby, deceased, that he thereafter duly qualified as such administrator, that letters of administration of said estate were by said court duly issued to him and that said McNary has ever since been such administrator.

The judgment is for the delivery of said property to the defendant, McNary, or, if the same cannot be so delivered, for the sum of three thousand dollars, the value thereof.

This appeal is by the plaintiff from said judgment and is supported by a record made up according to the alternative method.

It appears that on and prior to the thirty-first day of January, 1921, H. Panosian, Norton K. Crosby (the deceased above referred to) and John Safer were the owners of a 160-acre tract of land which is situated near the town of Arbuckle in Colusa County, in the following proportions in severalty: Panosian forty acres, Crosby eighty acres and Safer forty acres; that these several parcels of land, to the extent of seventy acres in the aggregate, were improved and devoted to the growing of raisin grapes and almonds; that, on the thirty-first day of January, 1921, the three parties

named entered into an agreement in writing, which, in sub-stance, provided: That said parties, for the purpose of farm-ing and developing said property and growing thereon grapes and almonds, and "in consideration of the mutual advantage to be derived from the association of said parties for said purpose," agreed to pool their several interests in said land and the crops thereon growing and manage and work the same jointly and as one enterprise; that, to this end, the said Crosby, who then resided on his parcel of said 160 acres, was to be given and have personal super-vision and management of all said property, and devote all the time necessary to the proper management "of said farm-ing enterprise," with full power to purchase whatever equip-ment, machinery, supplies, etc., he might find essential to the carrying on of the same "in a first-class manner"; that said Crosby was to improve the unimproved ninety acres of the 160-acre tract, "under the same terms and as may here-after be agreed upon between the parties"; that the expense required to operate or carry on "said enterprise" was to be borne by Crosby in the proportion of one-half thereof and Safer and Panosian each one-fourth thereof, and the profits derived from the enterprise were to go to said par-ties in the same proportions respectively; that Crosby was to receive, in addition to his one-half of the profits, the sum of six hundred dollars, as compensation for "his personal management and supervision of said enterprise." It was further provided in said agreement that "this lease," as it is termed in said written agreement, was, by the terms of said agreement, to terminate on January 31, 1922, unless con-tinued in force, and this was to be done, if it was the desire to continue it on the same terms, by an indorsement to that effect on the writing itself and subscribed by the said parties.

Crosby, in pursuance of the terms of said agreement, as-sumed and took active management of the properties and continued so to manage them until there arose between the parties the misunderstanding regarding the sale of the rai-sins and almonds which led to the institution of this action by the plaintiff, and as to which misunderstanding the facts will now be stated.

Panosian was the father-in-law of Safer, and these two resided and remained in Fresno, while Crosby was engaged in managing "the enterprise." Shortly after the said agree-ment was made, Panosian sold or transferred his one-fourth

interest in the fruit crops growing upon the land to his son-in-law, Safer.

On the eleventh day of August, 1921, the following document was signed by Crosby and Safer, which was received in evidence and marked "Exhibit A":

"We have given authority to A. Panosian to sell the crop of the 160 acre ranch known as Stanton's Place and consisting of 20 acres of vineyard and 40 acres in almonds, for the sum of $500.00, Five Hundred Dollars, with privileges of using all trays and boxes on said place in curing the crop, with understanding that all trays and boxes are to be collected and stacked at their places, after curing said crop.

"If we fail to live up to our agreement, we agree to pay A. Panosian $400.00, Four Hundred Dollars."

On the same day (August 11, 1921), Panosian, so the plaintiff and Safer testified, sold the entire crop grown on said lands to the plaintiff for the sum of five hundred dollars, and Panosian and the plaintiff signed a writing in the city of Fresno, of date August 11, 1921, the same having been prepared by Attorney South of said city and one of the attorneys for the plaintiff herein, purporting to evidence such sale. This writing was received in evidence and designated plaintiff's Exhibit "B." Panosian and the plaintiff testified that the latter paid for said crops in two several amounts on two different occasions. A short time thereafter—how long a period thereafter is not made definitely to appear—the plaintiff, accompanied by Safer and a "hired man" went to the land and the plaintiff exhibited his agreement of sale to Crosby and informed him that he (plaintiff) had purchased the entire crops of grapes and almonds and the raisins which had already been cured for five hundred dollars from Panosian, that he had paid the latter said sum, and demanded possession of said crops and raisins. Crosby declined to deliver possession, declaring that he had already sold the crops and the raisins to a firm known as Guggenheim & Company. After some controversy over the matter, the plaintiff, leaving Safer and his "hired man" in charge of the crops, with instructions to maintain possession thereof for him, returned to Fresno. The facts will be further considered as we proceed with the discussion of the points urged by the plaintiff.

The grounds of the attack upon the judgment are these:
**1.** That the legal effect of the written agreement by the

terms of which Crosby, Panosian and Safer associated themselves together in the prosecution of the business of growing and selling the fruit products of the land described in said writing was to create the relation of partnership between said parties; that, therefore, Safer being the sole surviving partner of Crosby, deceased, is, by virtue of the terms of section 1585 of the Code of Civil Procedure, entitled to the sole and exclusive possession of the personal property in controversy for the purpose of settling the business of the partnership; that, per consequence, defendant McNary, as administrator of the estate of Crosby, deceased, is not entitled to such possession until the business affairs of the partnership have been fully adjusted and settled; 2. That Exhibit ''B,'' executed by Crosby and Safer, vested in Panosian the unqualified authority to sell the crops for a definitely stipulated sum, and that the sale of the crops to plaintiff by Panosian under the authority so conferred for the sum specified in the writing was and is binding on Crosby and Safer; 3. That the findings vital to the judgment do not derive sufficient support from the evidence. In other words, the contention as to the last stated point is that the evidence, without conflict, shows that Panosian was authorized to sell the crops, did sell them and that the interests of Crosby and Safer therein were thereby divested.

1. The point that the effect of the written agreement between Crosby, Panosian and Safer, whereby they associated themselves together to carry on, as a joint enterprise, their several or independently owned interests in the business of growing grapes and almonds on the land described in the complaint was to establish a partnership relation between them, constitutes the subject of an extended discussion *pro* and *con* in the briefs of the respective counsel. While it is doubtful whether the said parties by said agreement intended to establish the partnership relation, still it must be conceded that the agreement bears some of the characteristics of a partnership, and yet, viewed by the light of the evidence in the case, it might well be said to amount to a joint adventure. But, in view of the situation as to the transactions eventuating in this litigation as disclosed by the record, the question whether the agreement involved the creation of a partnership or a joint adventure or a mere association by the parties for the purpose of rendering to each other mutual assistance in the growing, har-

67 Cal. App.—33

vesting and marketing of their respective crops, is of no particular consequence in the decision of this case. We will, however, for the purpose only of considering the point that Safer and not the defendant McNary, as administrator, etc., was entitled to take possession of the property in dispute, assume that the effect of the agreement was to create a partnership between the parties. Section 1585 of the Code of Civil Procedure reads as follows: "When a partnership exists between the decedent, at the time of his death, and any other person, the surviving partner has the right to continue in possession of the partnership, and to settle its business, but the interest of the decedent in the partnership must be included in the inventory, and be appraised as other property. The surviving partner must settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balances as may from time to time be payable to him, in right of the decedent. Upon the application of the executor or administrator, the court, or a judge thereof, may, whenever it appears necessary, order the surviving partner to render an account, and in case of neglect or refusal may, after notice, compel it by attachment; and the executor or administrator may maintain against him any action which the decedent could have maintained."

It will be observed that by the above section the surviving partner has the right to continue in possession of the partnership for the purpose of settling the business thereof, which he is required to do within a reasonable time, and likewise report the same and pay any balances due the decedent to the executor or administrator. If he fails to do this, the executor or administrator may proceed to compel him to do so by the proceeding outlined in said section. In the present case Safer, the alleged surviving partner, not only failed to exercise his right to continue in possession of the partnership, but, in effect, took the position from the time this controversy arose that there were no partnership assets. He failed to perform the duty which the above section required of him and by his conduct prior to the commencement of this action and by his testimony in this case clearly indicated that he had no intention of taking charge of the alleged partnership business for the purpose of settling it. [1] While we have found no express provision of law specifically providing that, in case the surviving partner

fails to exercise his right to continue in possession of the partnership for the purpose of settling its business, the executor or administrator of the estate of the deceased partner may, as such, take possession of the latter's interest in the partnership, we think it is clear upon principle that it would be his duty to do so under such circumstances. Indeed, if this were not true, the interests of the deceased partner in the partnership might be wasted or otherwise (perhaps through the fraud of the surviving partner) be lost to the estate. The right of the administrator of the estate of the deceased in this case to appear and defend in behalf of the estate of the deceased in this action seems to be so clear that further discussion of the proposition is unnecessary. The fact is, Safer waived his right to continue in possession of the property as the surviving partner, if in truth he ever had any such possession, and, indeed, allowed a default to be taken against him in this action in favor of the plaintiff herein, which indubitably shows that he did not intend to continue in possession of the partnership, if such it was, but, on the contrary, intended in every way to aid in securing a determination that the personal property involved herein was not at any time after the alleged sale thereof to plaintiff any part of the so-called partnership assets.

[2] 2. The contention that by Exhibit ''A'' above quoted herein Safer and Crosby conferred upon Panosian the unqualified authority and right to negotiate the sale of the crops from the lands referred to for the sum of five hundred dollars is not sustained by a reasonable construction of the language of the writing itself. It will be observed that the last clause of said writing reads: ''If we fail to live up to our agreement, we agree to pay A. Panosian $400.00, Four Hundred Dollars.'' It is clear from this language that Panosian's authority was intended to be limited by the writing to the finding of a purchaser of the property and not to the negotiation of the sale thereof to said purchaser except upon the consent of Crosby and Safer. In other words, the last paragraph seems to be absolutely clear upon the proposition that Panosian was not authorized to consummate a sale of the property, unless, after finding a person willing, ready and able to purchase the same at the stipulated price, Crosby and Safer prior to the consummation of the sale ratified or consented thereto. The writing might

well be said to confer upon Panosian the authority to offer any person desiring to purchase the fruit an option to make such purchase, which option was subject to the right of Crosby and Safer or either of them to accept or reject the proposition to sell. It is also clear that the trial court was justified in finding, as impliedly it did, from said paragraph in Exhibit "A" and the actions and conduct of the parties as disclosed by the evidence, that the sale was not to be consummated by Panosian unless both Crosby and Safer previously consented thereto.

The above construction, we may assume from the findings, accords with that given it by the trial court. As seen, it was shown that Crosby, upon being told by plaintiff and Safer that Panosian had sold the fruit to the former, declared that he would not confirm or ratify the sale; that Panosian had no authority to make an outright sale of the fruit; that he (Crosby) had sold the fruit to Guggenheim & Company. Testimony to this effect was given by a number of witnesses, including a representative of Guggenheim & Company, all of whom stated that the conversation occurred in their presence between the deceased and Safer and the plaintiff. That Crosby had the right to sell the property, is implied from the language of the agreement to the effect that he was, at the end of the term of the agreement, to render a full and correct account "of all moneys expended and *of all moneys received as a result of said enterprise.*"

[3] But even if it were necessary to concede that the construction thus given the writing is erroneous, still we are satisfied that this court cannot disturb the implied finding that the purported sale of the property to the plaintiff did not involve a *bona fide* transaction. In other words, we think the implied finding that no actual sale was made by Panosian to the plaintiff is supported by all the circumstances of the case, or, at any rate, the evidence tending to support such finding is such as to preclude this court from declaring that the decision of the court upon that question is erroneous.

The defendant McNary does not specifically allege in his answer that the alleged sale involved a fraudulent transaction or was one which was falsely represented by Panosian, Safer and the plaintiff to have been consummated for the purpose of defrauding Crosby out of his just rights in the

property. In other words, fraud was not set up by the defendant McNary for the purpose of vitiating the effect of said writing, assuming that such effect was to vest in Panosian the right to consummate a sale of the crops for the sum stated therein. This probably was due to the fact that said defendant's counsel construed said writing as we have herein construed it and so regarded it as not having given authority to Panosian to sell the property except upon the express consent of both Crosby and Safer. [4] However this all may be, the court below, notwithstanding that the issue of fraud as to the alleged sale was not tendered by the answer, was authorized, for the purpose of determining the credibility of the witnesses or the weight to be attached to the testimony of the plaintiff, Safer and Panosian as to said transaction, and whether the same was *bona fide* or involved a mere pretext in order to secure advantage of Crosby, to take into account all the circumstances characterizing the carrying out thereof. [5] And it is to be presumed, in support of the judgment, that the court below rejected as untrue or as unworthy of belief the testimony of Panosian, Safer and the plaintiff appearing to show that the purported sale was in fact a *bona fide* transaction, or, to state the proposition in a more direct and positive form, that the implication from the decision is that said court concluded and found, from all the circumstances disclosed at the trial of the case, that the transaction involving the purported sale was fraudulent and carried out by said parties with the purpose and intent wrongfully of depriving Crosby of his just rights in the property in dispute. The circumstances may briefly be recited: That the plaintiff made the alleged purchase without having any personal knowledge of the condition of the crops; that he paid five hundred dollars for the property which admittedly was of the value of three thousand dollars; that Panosian and Safer, the former the father-in-law of the latter, and who once owned a one-fourth interest in the crops, but which he transferred to his son-in-law, immediately upon the execution of Exhibit "A" together proceeded to look for and shortly found in the person of the plaintiff an alleged purchaser of the crops; that immediately upon said alleged purchase being effected, the plaintiff appointed and constituted Safer as his agent, with authority to sell the crops for him (plaintiff); that within a few days thereafter Safer sold the crops to Rosenberg &

Company for a sum slightly in excess of three thousand dollars; that, on arriving on the land with plaintiff after the purported sale to the latter, Safer apprised Crosby of the alleged sale, saying to him (as a number of disinterested witnesses who heard the conversation testified) that he (Safer) had sold the grapes, raisins and nuts to plaintiff for the sum of five hundred dollars; that, so the plaintiff testified, neither he nor Safer then tendered or offered to pay Crosby any money for his interest in the property, but that Safer, although admitting he had previously received the full amount of the alleged purchase price, offered to give Crosby his (Safer's) note for the former's share of said amount, which Crosby refused to accept. Other circumstances tending to stigmatize the transaction culminating in the alleged sale of the property to plaintiff as spurious or wholly without foundation in fact might be referred to herein, but the circumstances already adverted to as characterizing the transaction are such as to compel the conclusion that it would amount to an unauthorized invasion of the province of the trial court, as the arbiter of the questions of fact, for a court of review to declare that the implied finding that no sale of the grapes, etc., to plaintiff was actually made by Panosian or any other person was not warranted. Indeed, upon the presumption, which this court must indulge, that the trial court disbelieved and rejected as unworthy of belief the testimony of Panosian, plaintiff and Safer to the effect that there was a *bona fide* sale of the property, no other witnesses having given testimony as to the alleged sale, the record must be viewed by this court as practically containing or disclosing no testimony showing or tending to show a sale of the crops by Panosian to plaintiff. But we may even proceed a step further and say that, upon their face, the circumstances above recited herein, strongly tend to show that the whole scheme of Panosian and Safer, with the aid of the plaintiff, was to perpetrate a fraud upon Crosby and so deprive him of his just proportion of the actual value of the crops.

There is, it is true, evidence tending to the conclusion that Crosby was willing to sell the crops for the sum of five hundred dollars. The fact that he joined in the execution of the writing authorizing Panosian to find a buyer at the figure named may well be so construed. Again, it was made to appear that about three months prior to the

execution of said writing Crosby addressed to Panosian a letter in which he stated that the grapes and nuts were not in a healthy condition or had been damaged by the frost and, in effect, suggested that they should be sold for whatever they could get for them. It is significant, though, that when Safer told Crosby that the crops had been sold to the plaintiff, Crosby declared that he would not deliver possession thereof to the plaintiff unless he was paid the sum of five hundred dollars in cash. From this statement it may be inferred that Crosby might have understood the proposition involved in the purported authorization to Panosian to sell the crops to be that he was to receive for his share, if the crops were sold under said authorization, the sum of five hundred dollars. But, be that as it may, even with all the testimony referred to as indicating Crosby's willingness to sell the crops for the sum of five hundred dollars, it was still for the court to determine from all the evidence the truth or the real character of the transactions culminating in this controversy, or, as above stated, to determine whether the testimony of Panosian, Safer and the plaintiff was to be given any credence, and to disbelieve their testimony as presumptively it did. (See *Richey* v. *Butler*, 40 Cal. App. 314, 318 [180 Pac. 652].)

[6] The purpose of the action of claim and delivery, like the common-law writ of replevin, is to try the right to the possession of personal property or chattels, and, therefore, where a party claims the possession of movables and resorts to the action in claim and delivery to establish his claim, it is incumbent on him to prove that he is entitled to the immediate possession of the chattels or personal property, whatever may be the source of such claimed right. If in this he fails, so must his action fail. [7] In the present case, the plaintiff's claimed right to the possession of the property in controversy is founded solely upon his alleged ownership thereof. He failed, according to the trial court's decision, to establish his ownership of said property, and with such failure necessarily his claim of right to the possession of the property also failed. With the decision of the trial court, for the reasons above explained, we are without just authority to interfere.

The judgment is affirmed.

Plummer, J., and Finch, P. J., concurred.