[Civ. No. 3109. Third Appellate District.—July 31, 1928.]

GOLDEN STATE ORCHARDS (a Corporation), Respondent, v. C. B. HARTER, Appellant.

W. P. Rich and Lawrence Schillig for Appellant.

Arthur L. Erb and W. H. Carlin for Respondent.

HART, J.—This is an action in claim and delivery for the redelivery to the possession of the plaintiff by the defendant of 370 tons of dried French prunes and 80½ tons of dried Muir peaches, of the alleged approximate aggregate value of $70,000, or in case such redelivery is not had or cannot be made, that plaintiff be awarded judgment in the said sum of $70,000, as the value thereof, together with the sum of $10,000 as damages for the wrongful detention of

said fruit by defendant after demand was made by plaintiff for the return to it of the possession thereof.

The plaintiff is a California corporation, with its principal place of business in the county of Glenn, and was, at all the times mentioned in the pleadings and herein, the owner of an orchard of extensive acreage near Hamilton City, said county.

The defendant, at all said times, "was and now is engaged in the drying, packing and processing of dried fruits, at Harter Station, on the Sacramento Northern Railway, in Sutter County, California, and during all of said times owned and possessed the necessary equipment, buildings, machinery and warehouses for the doing of said work and the storing of such fruit." It appears that during the month of September, 1924, after the plaintiff had completed the harvesting of its fruits produced on its said orchard, and after the close of the harvesting season, plaintiff and defendant entered into negotiations for the delivery by the plaintiff to the defendant of certain quantities of dried prunes and peaches, produced on said orchard of plaintiff, "for the sorting, grading, processing, packing and storing of such fruit by said defendant." Thereafter certain written correspondence was had between the parties relative to said negotiations, and it is the letters passing between them and constituting such correspondence which form the agreement formally entered into between the parties for the purpose mentioned. The following are the letters referred to:

"C. B. Harter.

"Yuba City, Cal., Sept. 27, 1924.

"Golden State Orchards,
 "Hamilton City,
 "Glenn Co. Cal.

"Attention Mr. Moore.

"Gentlemen:

"In accordance with our conversation with your Mr. Moore on our visit to your orchards on Sep. 24th, we are pleased to outline our proposition to pack your fruit.

"We propose to receive, grade, process and pack your prunes and peaches in accordance with the best approved methods and in regular containers according to trade standards. We shall use the utmost diligence in taking proper care of your fruit while in our custody. Through our spe-

cial arrangements with Harry Hall and Co., Inc., we will pack your fruit under brands favorably known for many years.

"Our charges for this work are $30.00 per ton for well cured fruit. Any extra handling such as for hand sorting on account of defective fruit to be charged to your account at cost.

"In stating our proposition to you we believe you realize the advantages of having your goods merchandized put up as described. Should there be any questions in your mind which we have not made clear we shall be glad to come to an understanding and trust we shall hear favorably from you in the course of a few days.

"Yours very truly,

"C. B. HARTER."

"Golden State Orchards.

"Hamilton City, Calif., October 15, 1924.

"C. B. Harter, Esq.,

"Yuba City, Calif.

"Dear Sir:

"Referring to your letter of Sept. 27th, and to our conversation held at your plant on Oct. 12. We wish to confirm our understanding of the arrangement you proposed to us for handling our fruit.

"The charges of every nature for handling our fruit from on board cars your station Harter, processing, grading, packing and loading, when sold, shall be $30.00 per ton of cured fruit. This price to include storage of the fruit until such time as it is sold and also the use of bags for containing the fruit from our ranch to your packing plant.

"Knowing the great importance of grading the processed fruit as well of course as properly processing, we rely upon your promise to place in charge a well experienced man.

"Further it is our understanding the fruit will be, when received by you, sized or graded and held in bins set aside for our sole use until we have sold them.

"We confirm the statement made to you regarding our arrangement with Harry Hall, Inc., viz., that they will from time to time submit bids upon which if we accept will pay to them their commission of 5%. This makes it possible for

us to accept the highest price no matter from what source it comes.

"Please acknowledge receipt of this letter and if it meets with your approval confirm.

"Yours very truly,
"GOLDEN STATE ORCHARDS,
"By GRANVILLE MOORE."

"C. B. Harter.

"Yuba City, Cal., Oct. 17th, 1924.
"Golden State Orchards,
"Hamilton City,
"Glenn Co. Cal.
"Attention Mr. Granville Moore.
"Gentlemen:

"Your favor of October fifteenth has been received and the contents noted.

"With regard to the charges we wish to call your attention to the third paragraph of our letter to you of September twenty-seventh, in which we stated that the charges would be $30.00 per ton for packing well cured fruit. Any extra handling such as for defective fruit to be charged to your account at cost.

"In reference to the storage, the charge of $30.00 per ton is to include storage till the first of June, 1925. We will issue warehouse receipts if desired.

"With the above limitations to your letter, we hereby wish to confirm it.

"Yours very truly,
"C. B. HARTER."

Thereafter, and in pursuance of the agreement evidenced by said letters, the plaintiff, with sacks or bags furnished by the defendant, sacked, shipped, and delivered to defendant, at Harter Station, in Sutter County, and the latter received and took into his possession 370 tons of dried French prunes and 80½ tons of dried Muir peaches.

It appears that, on the thirty-first day of January, 1925, the plaintiff agreed to sell and did sell the entire lot of prunes delivered to defendant under the agreement to Guggenheim & Co., and agreed to sell and did sell the entire lot of peaches, likewise delivered, to the California Packing Company; that thereafter the plaintiff served upon the defendant a written demand for the redelivery to it by him

of all of said fruit unprocessed and unpacked, etc., thus, so far as plaintiff was concerned, terminating or proposing to terminate the life of the agreement before its terms had been complied with. With this demand the defendant refused to comply. This writing stated that plaintiff had made a contract for the sale of said fruit and "desires to consummate such sale by delivery of the products and failure to receive the same and make such delivery will entail upon the undersigned a great loss in excess of probably more than ten thousand dollars: . . . "; that "in connection with this demand the undersigned hereby offers to satisfy any warehouseman's lien which you may have or hold against said property." By said writing the plaintiff also demanded from the defendant "an itemized statement, or if not convenient for an itemized statement, a reasonable statement of any and all legal charges which you may have against said property." This demand was refused by the defendant, in a letter dated February 4, 1925, and served upon the plaintiff. This letter reads, in part, as follows:

"Under such agreement with Golden State Orchards, a corporation, this fruit was received by me as aforesaid, to be graded, processed and packed for which you agreed to pay me the sum of $30.00 per ton and aggregating $13,515.00.

"This fruit was to be processed and packed out as ordered by you, and all the work to be done by me, including the storage of such fruit, has been performed, except to process and pack, and I understand you now wish to break your agreement with me and take the fruit as it now is. In order to accommodate you, I am willing to let you have the fruit upon the surrender of the warehouse receipts issued therefor, properly endorsed, and I will deduct from said sum of $13,515.00, so agreed to be paid by Golden State Orchards, the amount that it will cost me to complete said contract in accordance with the terms thereof, which sum for such uncompleted work, labor and materials will amount to the sum of $5,230.31.

"Therefore, I demand payment from you of the sum of $8,284.69, plus the further sum of $25.37 which you agreed to pay in addition to said $30.00 per ton for hand sorting such fruit, which additional work has also been done, and I claim a lien on said fruit as security for the payment to

me of the sum of $8,310.06, being the amount which is due me in case you desire to terminate and cancel the agreement aforesaid.

"The warehouse· receipts mentioned by you as issued when said fruit was received by me, pursuant to said agreement, were issued at your special request in order that you might use the same as collateral in obtaining advances on such fruit, and the same were issued in the form they were to give notice of my claim of lien for the work to be done and performed by me and advancements therefor in accordance with such agreement.

"Warehouse and weighing charges are included in said sum of $30.00 per ton, so agreed to be paid by Golden State Orchards, and are included in the amount herein demanded of you, but if you desire such agreement cancelled the sum herein demanded from you does not include any costs which may be incurred in delivering such fruit to you in its present condition.

"The amount herein demanded is a reasonable charge in view of the agreement hereinbefore referred to.

"You are further notified that I am ready and willing to complete the terms of my agreement with you, but if it is any accommodation to you to terminate such agreement am willing to allow the same to be cancelled upon receipt of the sum herein demanded, together with the warehouse receipts as aforesaid."

Thereafter, and on the thirteenth day of February, 1925, the plaintiff instituted this action, and the sheriff of Sutter county in due time took possession of the fruit in accord with the procedure prescribed by section 511 of the Code of Civil Procedure. The defendant made no demand for a return to his possession of the fruit.

The complaint is in form usual in actions of claim and delivery. The defendant, by his answer, besides tendering an issue upon the question of the right to the possession of the fruit (claiming and setting up a special lien thereon, the force of which is dependent upon possession) pleaded, as and by way of a "counter-claim" a demand for payment by the plaintiff of the sum of $13,529.36, which includes services already performed on said fruit when the same was removed from his possession by the sheriff and also for

"the processing and packing of such fruit, which processing and packing has been prevented by the taking of said property from the possession of said defendant."

Among the court's findings are the following:

## "III.

" . . . on the 3rd day of February, 1925, and prior to the date of the commencement of this action, plaintiff did offer and tender to defendant payment of all charges, claims and demands which defendant had against said property and also offered and tendered to him the warehouse receipts issued by defendant upon the receipt of said property, and did offer to perform all acts and things on plaintiff's part to be done and performed in connection with said property, and did thereupon demand delivery of the possession of said property to plaintiff, and defendant did thereupon wrongfully and illegally fail and refuse to deliver up said property to plaintiff or any portion thereof," etc. . . .

## "V.

"In pursuance of said agreement evidenced by said Exhibits 'A,' 'B' and 'C,' (the above letters) plaintiff delivered said fruit, namely, said prunes and peaches, to defendant at Harter Station in the County of Sutter, State of California, and the defendant did receive said fruit, did weigh, sort, grade and place the same in bins, but he did not process or pack said fruit or any thereof; defendant was ready and willing to process and pack said fruit but was not directed so to do by plaintiff, as such processing and packing was to be *done only in the event that plaintiff should sell such fruit and as aforesaid*, plaintiff removed said fruit from the possession of the defendant before the same was sold.

## "VI.

"At the date of the commencement of this action there was due, owing and unpaid from the plaintiff to defendant, for the said storage of the work done upon said prunes and peaches aforesaid, the sum of $1576.50 and the further sum of $25.37 as the reasonable cost of said hand sorting done to said fruit by defendant, making in all the sum of $1601.87 which is the total amount of all claims and demands on the part of defendant against plaintiff in connection with said prunes and peaches and for the payment of which prior

to the date of the commencement of this action, defendant did have a lien upon said fruit aforesaid."

It was further found that the plaintiff "did not suffer any consequential damage, either in the sum of $10,000.00, -or in any other sum."

Judgment, in accordance with the findings and conclusions of law, was entered, the defendant being thereby awarded the sum of $1,601.87 for services rendered upon said fruit down to the time the possession thereof was taken by the sheriff, as already explained.

Being dissatisfied with said judgment, the defendant, after unavailingly pressing a motion for a new trial, took and here prosecutes this appeal from said judgment.

The principal question presented by this appeal is whether or not defendant's lien extended to the whole amount which he was entitled to recover from the plaintiff, not only for what he had actually done but for damages resulting from plaintiff's prevention of the completion of the contract.

■ There is no reasonable ground for doubting that the agreement between the parties as indicated by said letters, and, indeed, as shown by the court's findings, was and is that Harter was to receive, store, process, and pack the fruit when a sale thereof was made by the plaintiff and upon notice of such sale. The letter from the plaintiff to the defendant dated October 15, 1924, and in reply to the letter from the latter to plaintiff of September 27, 1924, as will be perceived, plainly supports this view of the agreement. It, among other things, states: "The charges of every nature for handling our fruit from board the cars your station Harter, processing, grading, packing and loading, *when sold,* shall be $30.00 per ton of cured fruit." The court, as stated, in effect, so found in finding V, as follows: " . . . defendant was ready and willing to process and pack said fruit but was not directed so to do by plaintiff, as such processing and packing was to be done only in the event that plaintiff *should sell* such fruit." Moreover, the testimony of Granville Moore, president of plaintiff, and who for the latter conducted the negotiations between the parties culminating in the making of the written agreement (the letters), testified that the agreement was intended to be this: That for "doing this work—taking the fruit to the warehouse and holding it, storing it, processing, packing it and ship-

ping it out'' for plaintiff, the defendant was to receive "thirty dollars per ton, with a declared profit of five dollars per ton." (Trans., pp. 20, 21.)

But the court found, as will be observed from finding V, that the defendant was not directed by the plaintiff to process and pack said fruit, "as such processing and packing was to be done only in the event that plaintiff should sell such fruit and as aforesaid plaintiff removed said fruit from the possession of the defendant before the same was sold." From that finding it seems clear that the theory of the decision is that the agreement as expressed in said letters was intended to mean and does mean that, irrespective of whether the terms of the agreement had or had not been fully performed, the plaintiff could withdraw from the defendant's possession said fruit at any time before a sale thereof was made and so terminate the life of the agreement. Of course, as above indicated, we do not agree with that construction. The finding referred to, though, derives no support in the evidence. The admitted fact is (as shown above) that the fruit was sold by the plaintiff on the thirty-first day of January, 1925, and that the written demand was served on the defendant on the third day of February, 1925—that is, that document was dated that day, but, as the record is not clear as to the particular time at which the demand was served on the defendant, it is to be presumed that it was served on the day of its date. The fruit having thus been sold, under the terms of the agreement, it was the duty of the plaintiff to direct the defendant to process and pack the fruit and thereupon ship or deliver it to the purchasers, or if plaintiff desired and intended to or did sell the fruit in bulk unprocessed and unpacked, then to pay him (defendant) a sum equal to what his profits would be for doing that work if he had not been prevented by the plaintiff from performing in full the terms of their agreement. The plaintiff, however, as we may well assume, sold the fruit with an understanding with the vendees that it would or was to be delivered to the latter without first being processed and packed. It is a self-evident proposition that the plaintiff could not nullify its agreement, either in whole or in part, in that way.

In the case of *California Cured Fruit Assn.* v. *Stelling,* 141 Cal. 713 [75 Pac. 320], it was held that where a fruit grower made a contract for the exclusive possession of his fruit crop by the fruit association, which was to undertake the inspection, packing, and selling thereof, and delivered the crop to the association, and afterward retook possession thereof, the association had the right of possession and a cause of action in claim and delivery to recover the fruit from the grower. The principle upon which the decision of that case proceeded is applicable to the instant case.

 It is expressly conceded in the brief of respondent that as a warehouseman "he received this fruit and undoubtedly he had a lien upon the fruit for whatever services he rendered in connection therewith. This we conceded and in our demand for the possession of the fruit already set out in this brief we asked defendant to specify the amount he claimed due and owing to him for all services he had actually performed or caused to be performed in connection with the warehoused commodities." This same concession is made in several other places in the same brief. Of course, under the construction of the agreement, as we have announced it above, the defendant was entitled to a lien on the fruit and possession thereof for that purpose until the payment to him by plaintiff of all legitimate charges which would have accrued against said property if he had completed the performance of the contract, and he was not compelled or under obligation to surrender possession thereof until such charges were paid. (See Civ. Code, sec. 3051.) Or, if said section is not the direct authority for a lien in such case, or has been superseded by certain provisions of the so-called Warehouse Act of the legislature of 1909 (Stats. 1909, p. 437), then his lien upon the fruit attached by virtue of certain provisions thereof. Section 27 of said act, as said section was amended in 1919 (Stats. 1919, p. 398) provides, in part, as follows:

"Subject to the provisions of section thirty, a warehouseman shall have a lien on goods deposited by the owner or by the legal possessor of the property or on the proceeds thereof in his hands, for all lawful charges for storage and preservation of the goods; also for all lawful claims for money advanced, interest, insurance, transportation, labor, weighing, coopering and other charges and expenses in rela-

tion to such goods." (See, also, in this connection, section 31 of said act.)

The record discloses that, as provided by said act, warehouse receipts were issued by the defendant upon the delivery from time to time of said fruit to the latter by the plaintiff. In each of the receipts so issued the net weight of the prunes and the peaches was set forth and also a statement that the fruit was "received in original condition to be graded, processed and packed in accordance with agreement with Golden State Orchards." Section 3 of said act provides for the insertion in the warehouse receipts of any terms and conditions other than those prescribed in section 2, such "other terms or conditions" not to be contrary to the provisions of the act, nor in anywise to "impair his (the warehouseman's) obligation to exercise that degree of care in the safekeeping of the goods intrusted to him which a reasonably careful man would exercise in regard to similar goods of his own."

Nor did the defendant here waive or lose his right of lien on the property until full performance on his part of the agreement because he failed to take steps looking to the delivery by the sheriff of the property to him, in accord with section 514 of the Code of Civil Procedure. As seen, in his written refusal to comply with plaintiff's demand for the redelivery to it of possession of the fruit, he asserted his right to a lien upon the fruit, for all services required of him by the agreement, and asserted the same claim, in his purported counterclaim. Properly in this connection it may be suggested that the so-called counterclaim does not set up the charges against the fruit for services performed and to be performed under the agreement. The prayer of the answer is "for the return to defendant of said personal property, to wit: Said prunes and peaches for the purpose of enforcing his said lien thereon or for the sum of $13,529.36, the value of his special interest and lien in said property." But, the plaintiff having taken possession of the fruit in the replevin action, the defendant, assuming that the allegations of his answer are true, would have been entitled to all that he asks for in the prayer of the answer without filing any counterclaim. On the mere denials of his answer of the plaintiff's right to possession and proof of the facts necessary to establish the probative impregnability of those

denials, the defendant would be entitled either to the return of the fruit or the amount of his lien thereon. Therefore, the counterclaim, so called, may be treated as surplusage and wholly disregarded, and still the issue to be decided stands well tendered by the denials of the answer.

It follows from the foregoing that the plaintiff was not entitled to the possession of the fruit at the time the demand was made upon the defendant to redeliver possession thereof to it, nor, consequently, at the time of the institution of this action. "The purpose of the action of claim and delivery, like the common law writ of replevin, is to try the right to the possession of personal property or chattels, and, therefore, where a party claims the possession of movables and resorts to the action in claim and delivery to establish his claim, it is incumbent on him to prove that he is entitled to the *immediate possession* of the chattels or personal property, whatever may be the source of such claimed right." (*Normart* v. *Safer*, 67 Cal. App. 507, 519 [227 Pac. 943, 948] ; see, also, *Sidney* v. *Wilson*, 67 Cal. App. 282 [227 Pac. 672] ; *Automobile Truck Co.* v. *Salladay*, 55 Cal. App. 219 [203 Pac. 163].) The defendant, as we have said, was, under the agreement, entitled to the possession of the fruit until the purposes of the agreement, so far as he was concerned, were fulfilled, or, perhaps, at least (and this seems to be implied from his letter to plaintiff of October 17, 1924), until June 1, 1925.

■ As to the measure of damages in a case where, as here, the performance of the contract or obligation is prevented by the creditor, the rule is as it is stated in section 1512 of the Civil Code, as follows:

"If the performance of an obligation be prevented by the creditor, the debtor is entitled to all the benefits which he would have obtained if it had been performed by both parties."

Of course, said section automatically became a part of the agreement here, and we think it cannot reasonably be construed otherwise than as giving the defendant the right to claim as compensation under the agreement the difference between the contract price and the cost of completing performance of the contract.

In *Connell* v. *Higgins*, 170 Cal. 541 [150 Pac. 769], it is said that the damages in such case "would consist of the

profits he would have made if he had been permitted to complete the work according to the contract.''

In *Carlson* v. *Sheehan*, 157 Cal. 692 [109 Pac. 29], section 1512 of the Civil Code is construed to mean that ''if performance is prevented by the party who is to make such payment, the person doing the thing is entitled to payment as for full performance.'' This statement of the rule in such cases is upon its face too broad, but we are certain that what was and is meant by said statement is that the party who is to perform the service or do the things required of him by the contract is entitled, in such case, to receive the profits only which would accrue should there be full performance of the contract by him; or, in other words, that the party who was to do the things specified in the contract is entitled in such case to ''payment as for full performance,'' less the cost which would necessarily be incurred by full performance.

The trial court permitted the defendant to testify as to what it would cost him to complete the terms of his agreement upon the understanding that such testimony would be stricken out if the court should find that it was not admissible under what the court might later conclude was the proper theory of the case. Under the theory of the trial court's decision, if correct, the testimony was not admissible and upon that theory it was stricken out, or, at any rate, disregarded in the rendering of the decision. In our view of the case, as it is above pointed out, the testimony was proper. Of course, its probative value was and is a matter to be determined by the trial court.

The judgment is reversed.

Plummer, J., and Finch, P. J., concurred.