[Civ. No. 14958. Second Dist., Div. One. Mar. 30, 1946.]

COLIN MAYERS et al., Appellants, v. BEULAH
ALEXANDER, as Executrix, etc., Respondent.

Victor A. Berry for Appellants.

William R. Gallagher for Respondent.

WHITE, J.—This action was commenced by plaintiffs to specifically enforce an alleged agreement to sell certain real property, together with the furniture contained in the house upon said premises, located at 3830 Motor Avenue in the city of Los Angeles. From an adverse judgment plaintiffs prosecute this appeal.

The factual background which gave rise to this litigation, as reflected by the pleadings and the evidence adduced at the trial, may be thus epitomized: Plaintiffs and Lida M. Gertsen, now deceased, were next-door neighbors. During the summer of 1943 Mrs. Gertsen discussed the sale of the property with plaintiff Mr. Mayers. At that time the premises were occupied by Mr. and Mrs. Wm. Shirk as tenants of Mrs. Gertsen. On or about August 27, 1943, after an inspection of the premises and some conversation with Mrs. Gertsen, the plaintiff Mr. Mayers prepared on the typewriter an original and one copy of an agreement relating to the sale of the property, including some of the furnishings, the original of which document was signed by plaintiff Mr. Mayers and by

Mrs. Gertsen. This agreement (received in evidence at the trial as plaintiffs' Exhibit 3) reads as follows:

"Preliminary agreement between Mrs. Gertsen and Mr. Mayers

"3830 Motor av to be purchased for the sum of $5000 inclusive of furniture, except for certain personal articles. CASH PAYMENT to be $1500 (Fifteen hundred)

"Interest on balance of outstanding purchase price to be at 5% (five per cent)

"Minimum payment per calendar month to be $50 (dollars) This is to include interest and capital.

"Mr. Mayers however promises to pay $50 per month off on the capital as long as he is able to do so plus the interest

"Possession to be given on or about the 15th October

"Mrs. Gertsen will arrange to have the house guaranteed against termites, arrange clearance escrow, etc.

"1st payment November 1943."

Contemporaneously with the execution of this agreement Mr. Mayers gave to Mrs. Gertsen a check for $250, which he testified was "as a down payment." Some three or four days later, when Mrs. Gertsen advised plaintiff Mr. Mayers of her desire to have his wife's signature on the contract, Mr. Mayers prepared and delivered to Mrs. Gertsen another writing, signed by himself, his wife and Mrs. Gertsen. This memorandum agreement (introduced in evidence at the trial as plaintiffs' Exhibit 4) was as follows:

"Agreement for sale of real estate.

"We, Colin Mayers and Ida N. Mayers agree to purchase from Lida M. Gertsen, a widow, all of lot seven and the North Westerly twenty five feet of lot eight of the Fellows tract, as per map of said tract—book 10—page 92—Los Angeles records of maps for the sum of five thousand dollars.

"Payment to be as follows:

"$250 on the signing of this agreement

"1250 on Mrs. L. M. Gertsen giving possession of the property to the buyers; and thereafter:

"$50 per month—first payment to be the 1st of the month after a full month has elapsed from taking possession.

"Interest to be at the rate of 5% per annum, until the full balance of the purchase price has been paid."

Upon the execution of this agreement, according to the testimony of plaintiff Mr. Mayers, Mrs. Gertsen "told me she would go and see Mr. Nelson, a real estate man a few doors

away from where she was living. . . . I told Mrs. Gertsen to go and see Mr. Nelson, have him to copy out the formal agreement from the memorandum we had all signed. . . ." On the day following, Mrs. Gertsen advised Mr. Mayers that she had seen Mr. Nelson and she exhibited to him two copies of an agreement prepared by Mr. Nelson. After reading the documents, plaintiff Mr. Mayers advised Mrs. Gertsen that there was one word contained in the agreement which he would like Mr. Nelson to explain and requested Mrs. Gertsen to accompany him to Nelson's office, which she did. Arriving there, Mrs. Gertsen and Mr. Mayers had a discussion with Mr. Nelson relative to the terms of the agreement which the latter had prepared. This document was entitled "Agreement for sale of real estate," under the terms of which plaintiffs agreed to purchase and Lida M. Gertsen agreed to sell the property here in question for the sum of $5,000, of which $1,500 was to be paid upon execution and delivery of the agreement, and the balance was to be paid in monthly installments of $50 with interest at the rate of five per cent per annum until the entire purchase price had been paid, the interest to be included in the aforesaid monthly payments. This instrument, dated September 2, 1943, was never signed by any of the parties named therein. Because other people were waiting in Mr. Nelson's office, plaintiff Mr. Mayers suggested that he, his wife and Mrs. Gertsen return at another time, whereupon they all departed. After leaving Mr. Nelson's office the parties had a discussion regarding some papers received by Mrs. Gertsen from the OPA relating to the time when possession of the property could be obtained by the Mayers. Mr. Mayers prepared a notice to quit dated September 1, 1943, addressed to the tenants in possession of Mrs. Gertsen's property, which instrument she signed, and the same was served upon the tenants. Subsequently, on October 14, another notice to quit was prepared by Mr. Mayers, signed by Mrs. Gertsen, and served upon the tenants. According to the testimony of Mrs. Gertsen, read at the trial from her deposition, a few days prior to October 18, 1943, she told plaintiff Mr. Mayers that the OPA had advised her that in order to gain possession of the house she would be required to occupy the same herself, and that there would be a penalty if she sold the property before the expiration of six months after taking of such possession. She further testified that she told the Mayers "I couldn't sell because it was against the law"; that she would return the

$250 paid on account of the transaction, which she did according to her testimony on October 18, 1943, at which time she received from plaintiff Mr. Mayers a receipt reading: "Received from Mrs. Lida M. Gertsen the sum of $250/00 Two Hundred fifty dollars. Colin Mayers. Oct. 18th 1943." Plaintiff Mr. Mayers admitted writing the receipt, except that he did not recall inserting "18th" therein.

Some days after the return of the $250, Mr. Mayers prepared a letter to the OPA, setting forth the condition of Mrs. Gertsen's health and asking if she could sell the property. Mrs. Gertsen signed this letter and it was forwarded to the OPA. When Mrs. Gertsen received a reply thereto, dated November 8, 1943, she exhibited the same to Mr. Mayers, telling him she would not sell because "the instructions of that paper are not to sell." She told him to read that portion of the letter which stated, "In any event, if sufficient proof that an illegal eviction of a tenant has occurred comes to the attention of this office, proper action will be taken." At that time, according to the testimony of Mrs. Gertsen, she stated to Mrs. Mayers, "You see, I can't sell the house because the law won't let me. I am not breaking the law for anybody."

The real property involved in this litigation has a frontage of 75 feet and is 150 feet in depth. It is improved with a seven-room dwelling, consisting of three bedrooms, a closed-in sun-room used as a bedroom, a living room, dining room, kitchen, and what was termed a "bath and a half." There was testimony that on August 27, 1943, the market value of the real property, consisting of the house and lot, was $6,000, and that the value of the furniture was $400.

We shall first give consideration to appellants' contention that finding No. IV is unsupported by the evidence. The challenged finding reads as follows:

"That at or about the time the said two preliminary agreements, set forth in paragraph I hereof, were prepared, plaintiff Colin Mayers delivered to said Lida M. Gertsen the sum of $250.00; that on or about the 18th day of October, 1943, said Lida M. Gertsen returned to plaintiff Colin Mayers the said sum of $250.00 and said plaintiff Colin Mayers unqualifiedly accepted the same and issued to Lida M. Gertsen a receipt therefor; that said receipt is in words and figures as follows: (quoting receipt hereinabove set forth) . . .; that all negotiations between plaintiffs and said Lida M. Gertsen

for the sale of said real property and furniture were thereupon terminated by mutual consent of plaintiffs and said Lida M. Gertsen and the proposed sale of said real property and furniture was thereupon mutually and intentionally abandoned by plaintiffs and said Lida M. Gertsen.''

Even though it be conceded that the contents of the foregoing plaintiffs' Exhibits 2 and 3 fully met the definitely established requirements of a contract for the sale of real property as enunciated in *O'Donnell* v. *Lutter*, 68 Cal.App. 2d 376, 381 [156 P.2d 958], obviously, if the court's finding that said contract was terminated by mutual consent of the parties thereto is supported by the evidence the judgment must be affirmed. In asserting the insufficiency of the evidence to support the questioned finding, appellants earnestly urge that said finding ''is contrary to the weight of the evidence and that the preponderance of the evidence shows that the return of the deposit money was accepted by plaintiffs to be held in trust for Mrs. Gertsen.'' However, no rule is more firmly grounded in our law than the one which provides that a cause may not be presented on appeal as if the case were being tried *de novo*. The appellate tribunal must view the evidence in the light most favorable to the respondent and must not concern itself with determining where the preponderance of the evidence lies. A legion of authority supports the statement that when an attack is made upon a finding or judgment on the ground that it is not supported by the evidence, the power of the reviewing court is limited to a determination of whether there is any substantial evidence, contradicted or uncontradicted, which will support the challenged finding or the judgment rendered. All conflicts in the evidence must be resolved in favor of the prevailing party, and all legitimate and reasonable inferences indulged in to support the finding or uphold the judgment if possible. And when two or more inferences can reasonably be deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trier of facts. (*Crawford* v. *Southern Pac. Co.*, 3 Cal.2d 427 [45 P.2d 183].) Before an appellate court can reject the positive testimony of a witness who is believed by the trial court, such testimony must be inherently improbable. Neither does the fact that the testimony may disclose circumstances which are unusual justify a review thereof by an appellate court, which does not sit

as a jury to determine the issues of fact, the credibility of witnesses or the weight to be attached to their testimony.

With these rules in mind, let us proceed to an analysis of the evidence as to mutual cancellation of whatever contract of sale existed between the parties. It is true, as contended by appellants, that they positively testified that upon the occasion of the return of the deposit money Mrs. Gertsen stated that she had been advised by her attorney that should she sell the property to the plaintiffs and evict the tenants occupying the same she "would go to prison"; that she said "she could not sleep at night"; that plaintiff Mr. Mayers stated to her, "If it is going to make it easier for you, if you want me to hold the check, I will hold it for you pending the time . . . if you want me to hold the money for you in trust I will willingly do so." However, plaintiff Mr. Mayers also testified that when the deposit money was returned to him Mrs. Gertsen asked for a receipt, and that he thereupon wrote out the receipt hereinbefore set forth. It is significant that the receipt contains no statement to the effect that the money was to be "held in trust." Then there is the positive testimony of Mrs. Gertsen, as follows:

"Q. What did you say? A. I said it was against the law to sell, and I returned the money.

"Q. But you just wanted him to hold it for you, didn't you? A. No, I didn't want him to hold it. I said, 'The deal is off because I couldn't sell the house.'

"Q. Did you tell him that, that the deal was off? A. Yes. I said I couldn't sell; I wanted to give him back his money."

Mrs. Gertsen also testified that at the time of the return of the deposit money plaintiff Mrs. Mayers "wanted to know if I would give her first chance if I had the right to sell the house," and I said "Yes, I would, and I would sell if I could find a place to live."

From the foregoing we would not be justified in holding that there was not sufficient legal evidence upon which the trial court could rely in determining that whatever negotiations were pending or whatever contract existed between the parties for the sale of the property "were thereupon terminated by mutual consent of the plaintiffs and said Lida M. Gertsen."

Appellants, however, contend that the foregoing receipt was altered as to date, and that respondent failed to

sustain the burden of proof of accounting for such alteration. Even though we assume that the day of the month was changed from the 25th to the 18th, this would not amount to a material alteration in the instrument because the date of the same is inconsequential. It is only when an instrument is altered in a part material to the question in dispute that such alteration must be accounted for. (Code Civ. Proc., § 1982; Civ. Code, § 1700.)

█ The court also found that the purchase price of $5,000 to be paid by plaintiffs for said property was not the fair, adequate and reasonable value of said property; that in the month of August, 1943, the real property was fairly and reasonably worth the sum of $6,000. Specific performance cannot be enforced against a party "If he has not received an adequate consideration for the contract," and "If it is not, as to him, just and reasonable." (Civ. Code, § 3391.) The authorities are uniform in holding that the above requisite must be pleaded and proved before such relief can be awarded. Appellants assert that the finding against them on this issue is without evidentiary support. In this regard, defendant produced as a witness Eldred L. Meyer, a state inheritance tax appraiser. Plaintiffs stipulated to his qualifications. He testified that he was familiar with the property in question; that he made an appraisal of the same in October, 1944; that he checked the property 75 feet south of the premises in question and which had been sold. He testified that while he had never been in the house prior to the time he made the appraisal, he had been in the neighborhood many times prior thereto. He described the real property in detail as to frontage and depth, as well as the construction of the house, its plumbing and fixtures, all of which he testified were in good condition. When asked what in his opinion was the fair market value of the property involved in this action as of August, 1943, Mr. Meyer testified that it was $6,000 and that the value of the furniture contained in the house on the same date was $400. Contrary to appellants' contention, there was no evidence that the house was infested with termites.

█ Appellants contend that this witness disqualified himself as an expert because of conflicting evidence given by him. In that regard, it appears that he testified, when breaking down the value of the house and the lot, that the

market value of the land at the pertinent date was $1,500 and the house $3,500, making a total of only $5,000. When this was called to the attention of the witness by the court, he corrected this testimony, explaining that he had stated the values from memory in breaking them down. The original notes made by the witness at the time of his appraisal showed the value of the lot as $1,500 and the value of the improvements as $4,500, which would indicate that in placing the value of the house at $3,500 the witness merely erred in his mental calculations. In any event, the conflict went only to the weight and not to the admissibility of his testimony.

■ Appellants' contention that the witness was disqualified because he did not see the property in August, 1943, is devoid of merit. Although he was not upon the premises until October, 1944, he testified that he had been in the neighborhood many times. His position was that of state inheritance tax appraiser and appellants conceded his qualifications. The witness testified that he made some maps of the property; that he checked the property that was sold 75 feet to the south of the property in question; that he talked with the former owner of such property and ascertained the price at which it was sold. He further testified that he arrived at the market value of the property in question as of August, 1943, by taking into consideration the market value at that date and "checking our records on the similar properties, the cost of reproduction, and a comparison of sales"; that during the fourteen-month period from August, 1943, to October, 1944, there had been "very little change" in the market value of the property in the neighborhood here in question; that "houses have been in great demand and there was no trouble to dispose of a house of that type for $6,000."

Primarily, the trial court must pass upon the qualifications of an expert witness. As hereinbefore stated, appellants stipulated to the qualifications of the witness; the trial court held he was qualified, and the testimony shows that the witness was qualified to give his opinion as an expert on the value of the property here in question. And the weight to be given that testimony was a matter for the trier of facts. We find no error in the rulings of the court with reference to the admission of this evidence. (*People* v. *Willis*, 30 Cal. App.2d 419, 423 [86 P.2d 670].) ■ The fact that the witness did not actually see the property in August, 1943, might affect

the weight, but not the admissibility, of his testimony. (*Pann* v. *Barry*, 118 Cal.App. 127, 130 [4 P.2d 791] ; *Sacramento Suburban Fruit Lands Co.* v. *La Gue*, 40 F.2d 897, 899.)

■ That in an action to enforce specific performance of an executory agreement for the sale of land the plaintiff must allege and prove adequacy of consideration and that the agreement is not as to the other party unconscionable or inequitable, is a well established rule of law. (*O'Hara* v. *Wattson*, 172 Cal. 525, 535 [157 P. 608].) In the instant case there was substantial testimony that the house and lot were worth $6,000, whereas the agreement was to purchase the same for $5,000. In *Wilson* v. *White*, 161 Cal. 453 [119 P. 895], the sum of $14,000 cash was held not to be a fair, just or adequate consideration for property worth $15,000, and in *Haddock* v. *Knapp*, 171 Cal. 59 [151 P. 1140], the sum of $1,800 was held to be an inadequate price for the conveyance of property worth $2,500.

■ Appellants complain of the trial court's ruling refusing to admit into evidence plaintiffs' Exhibit 6 for identification. This exhibit was a card showing that the property in question was listed with a real estate broker in August, 1942, for sale at a price of $5,000. Defendant's objection was sustained by the court on the ground that the date of such listing was "too remote." We perceive no error in the ruling, because in addition to the remoteness of the date, such a listing card was not a proper method by which to establish the value of the property.

■ Appellants next contend that the court fell into error in excluding the testimony of Mariebell Allen, a realtor, that she had sold the property pursuant to a listing signed by Mrs. Gertsen offering the property for sale at $5,000 cash or $5,250 on terms ; that the property was sold by the realtor in August, 1943, just prior to the making of the sales agreement with appellants, and that a deposit was received by the realtor on account of such sale. The trial court admitted the listing card and the evidence for the purpose of showing the value placed upon the property by the owner thereof in August, 1943, but refused to permit the witness to testify that she "sold the property and took a deposit on it in August, 1943." This ruling was not erroneous. Market value of property cannot be established by evidence of a particular sale.

■ The issue before the court was the reasonable value

of the property in August, 1943. As to that issue, when this witness was asked, ''Well, do you know what the market value of the property was in August, 1943?'' she replied, ''I do not.''· This witness, and Y. C. A. Rodgers, a real estate broker, were the only witnesses called by plaintiffs to prove the value of the property and thereby show adequacy of consideration. When asked whether he was familiar with the market value of real estate in the vicinity of the property here under consideration, Mr. Rodgers replied, ''Well, I am not an expert by any means.'' When the court inquired as to whether he knew the reasonable market value in August, 1943, the witness stated, ''That would be very hard for me to say.'' Pressed for an answer, he finally stated, ''I have an opinion, yes; I have an opinion that $5,000 was a good price for that property. . . . That is my opinion, but I am not—I am not an appraiser or an expert in value.'' It must therefore be held that plaintiffs failed to sustain the burden of proof cast upon them to show adequacy of consideration.

 Finally, appellants urge that they were denied a fair trial because at the beginning of the proceedings the court directed that the issue raised by the defendant's first affirmative defense, which involved the question of abandonment and return of the deposit, be tried first, and after receiving some evidence on this defense, directed the plaintiffs to go forward with their evidence in the regular way. The cause was tried before the court without a jury. A wide discretion is vested in the trial court in regulating the order of proof in the trial of cases. It is only when there is a clear showing of an abuse of this discretion, resulting in prejudice to a party, that the admission of evidence out of the regular and accepted order will furnish grounds for reversal on appeal. In *La Mar* v. *La Mar*, 135 Cal.App. 693, 696 [28 P.2d 63], the court said: ''The questions of order of proof and the extent of permissible cross-examination are entirely procedural and unless a miscarriage of justice has resulted in the judgment rendered such errors furnish no grounds for a reversal since the adoption of section 4½, article VI, of the Constitution.

''The trial court is given a wide discretion in regulating the order of proof in the trial of cases. In the absence of a clear abuse of this discretion, and prejudice to the adverse party, the admission of evidence out of the regular order will

furnish no ground for a reversal on appeal. (24 Cal.Jur. 764-766 and cases cited.)'' ▇▇▇ While it is true that the court's action resulted in the defendant's evidence being produced in part first, it does not appear that either party was prevented by such order from producing all available evidence, or that either party desired to or could obtain or present any further or additional evidence than was offered. In the case here under consideration, neither abuse of discretion nor prejudice is shown. Appellants' contention that they were not afforded a fair trial cannot, therefore, he sustained. (*Minnich* v. *Minnich*, 127 Cal.App. 1, 6 [15 P.2d 804]; *Caminetti* v. *Prudence etc. Ins. Assn.*, 62 Cal.App.2d 945, 948 [146 P.2d 15]; *La Mar* v. *La Mar, supra*, at p. 696.)

The record is free from error; the evidence.supports the findings and the findings support the judgment. It is therefore ordered that the judgment be affirmed.

York, P. J., and Doran, J., concurred.