**CHAMBERLAIN v. FLEMING, Adm'r, OTC.**
**No. 13459.**

Circuit Court of Appeals, Eighth Circuit.
April 7, 1947.

J. Weston Miller, of Springfield, Mo. (Wm. P. Sanford and Miller & Fairman, all of Springfield, Mo., on the brief), for appellant.

Karl E. Lachmann, OPA, of Washington, D. C. (William E. Remy, David London, and Albert M. Dreyer, all of Washington, D. C., Isadore L. Kovitz, of Chicago, Ill., and Ralph E. Griffith, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

SANBORN, Circuit Judge.

The Price Administrator, Office of Price Administration, brought this action under Section 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S. C.A.Appendix, § 925(e), to recover statutory damages from S. G. Chamberlain, a food processor of Anderson, Missouri, who will be referred to in this opinion as "defendant". In his complaint the Administrator charged that the defendant on August 10, 1944, sold to the Government canned blackberries at prices which were $20,421.96 in excess of the allowable maximum prices, and that in the fall of 1944 he overcharged the Government $168.30 for canned tomatoes. The defendant denied that he sold the canned blackberries at excessive prices, but admitted that he inadvertently overcharged the Government $168.30 for the canned tomatoes. The case was tried to the court. The court determined that the defendant had overcharged the Government $20,421.96 for the blackberries and $168.30 for the tomatoes, and entered judgment for $20,590.26. This appeal followed.

The defendant challenges the judgment in so far as it relates to the alleged overcharge in the sale of blackberries, on three grounds: (1) that the applicable Maximum Price Regulation [No. 306 (8 F.R. 1114), as amended (see 9 F.R. 12,451)]—which

will be referred to as "the Regulation"— is so meaningless as to be unenforceable; (2) that if the Regulation is not meaningless, it was misconstrued and misapplied by the District Court; and (3) that the evidence does not sustain the judgment.

■ We think that the Regulation is not meaningless nor unenforceable. Section 1341.587 of the Regulation, which establishes maximum prices for canned blackberries packed in 1943 and 1944 (Section 1341.551 (g) ), provides four pricing methods. The first is based upon the processor's 1942 maximum prices, and is applicable to a processor who in 1944 sold a "pack of the same variety, style, grade and container" as in 1942. (Section 1341.587(a) (2) ). The second method applies to a processor who for his 1942 maximum price adopted a competitor's maximum price for the same product. This method requires the processor to adopt the same competitor's maximum 1944 price, unless the competitor did not pack the same product in 1944, in which case the processor's maximum selling price is that of his closest competitor selling a product of the same variety, style, grade and container. (Section 1341.587(a) (3) ). The third pricing method, which is applicable to a processor who sold a different variety, style or grade in 1944 than in 1942, consists in adopting the maximum 1944 price of his closest competitor selling the same product. (Section 1341.587(a) (4) ). The fourth method, which is available to a processor who is unable to establish a maximum price for his product under any of the first three methods, is to apply to the Office of Price Administration for authorization of a maximum price. (Section 1341.587(a) (5) ). The Regulation provides that the processor's maximum prices "for sales to government procurement agencies shall be 96% of the maximum prices for sales other than to government procurement agencies as established under subparagraphs (2), (3) and (4)" [of Section 1341.587(a) ]. (Section 1341.587(a) (6) ).

■ We interpret Section 1341.587 to mean that a processor of blackberries in 1944 was required to sell his product to the Government at a price which was no more than 96% of his maximum price to others; such maximum price to be ascer-

tained by whichever of the first three pricing methods [ (1) adjusted 1942 maximum price, (2) 1942 competitor's 1944 maximum price, or (3) nearest competitor's 1944 maximum price] was applicable. In other words, Government prices were 96% of maximum prices, whether based on a competitor's maximum price or on the processor's 1942 price. The Regulation does not provide that the Government price shall be 96% of a maximum price based on an authorization of the Office of Price Administration. (Section 1341.587(a) (5) ).

The claim of the Price Administrator is that the defendant in 1944 sold a pack of blackberries of the "same variety, style, grade and container" as the pack which he sold in 1942, and that therefore the basis for the defendant's maximum price in 1944 was his 1942 maximum price. The Administrator's evidence tended to substantiate his claim and indicated that in both years the defendant's canned blackberries were "water or pie" pack grade and were "light pack" as distinguished from "heavy pack", under the United States Standards for Grades used by the United States Department of Agriculture. A "water or pie" pack means that the berries are packed in water and not in sirup. The defendant's berries were so packed in 1942 and 1944. The grading system used by the Department of Agriculture recognizes subdivisions within the water pack grade known as "light pack" and "heavy pack". The distinction is based upon a "drained weight" test. The contents of a No. 10 can of blackberries are drained through a special screen for two minutes. If the bulk then remaining on the screen weighs eighty ounces or more, the pack is a heavy pack, but if less than eighty ounces the pack is light. According to the grades used by the Department of Agriculture, the defendant's pack in 1944 was "water or pie, light pack," and the District Court so found.

The Federal Government has another grading system for the use of federal procurement agencies, known as "Federal Specifications." This system recognizes "water or pie" pack grade for canned blackberries, but makes no distinction between light pack and heavy pack. It requires the cans to be "as full as possible without injury to the

fruit." Under the Federal Specifications, the defendant's pack in 1944 was "Grade D, water or pie."

The defendant argues that the issue whether he sold a pack of the "same variety, style, and grade" in 1944 as he did in 1942 was not to be determined by applying the grading system of the Department of Agriculture or the Federal Specifications. He points out that, under Section 1341.565 of the Regulation, he was not required to use either system for grading blackberries. The Price Administrator concedes that United States Department of Agriculture grades did not apply to the berries in suit.

As to the defendant's canned blackberries, "the term 'grade' means the commercial grade or customary trade quality designation at the time of shipment." (Section 1341.565(b) ).

The evidence of the defendant tended to show that he used a commercial grading system known to the trade; that this system recognized a distinction between a heavy pack and a light pack, not based upon the drained weight of the contents of a can, but on the fill of the can; that, under this system, a heavy pack consisted of cans initially filled to the top with berries, while a light pack consisted of cans filled to within an inch or an inch and a half of the top; that a heavy pack can contained about 27% more berries than a light pack can; that in 1944 the defendant was filling all cans to the top with berries, while in 1942 his cans were almost entirely of the light pack grade. He therefore contends that, under the commercial grading system which he used, his 1944 pack was not of the "same variety, style, grade and container" as his 1942 pack, and that the maximum prices of his 1944 pack cannot be based on his 1942 maximum prices.

The District Court made the following findings:

"(c) That in the years 1942 and 1944 the Defendant processed and canned the same 'variety, style, grade and container' of blackberries, to-wit 'Water-Pie' grade.

"(d) That the grade of the blackberries sold to the United States Government was 'Water-Pie' light pack."

"(e) That the formula used by Plaintiff for the determination of Defendant's ceiling price for the blackberries in question is the appropriate and proper method for the determination of Defendant's ceiling price for blackberries sold in 1944; that the calculation made by Plaintiff in accordance with said formula, is correct."

The finding of the court that the berries which the defendant sold the Government in 1944 were "Water-Pie, light pack" is based upon the grading system of the Department of Agriculture. This is made clear by the following quotations from the opinion of the District Court:

"* * * The United States Standards for Grades specifies 80 ounces of drained weight as constituting a heavy-type pack of blackberries. The Government Inspector, who inspected the blackberries in question prior to the sale thereof to the United States Government, established the average drain weight of the samples used in said inspection to be less than 80 ounces. * * * This evidence definitely establishes that the berries processed by Defendant in 1944 were a 'light pack'. The report submitted by Defendant, establishing his maximum price for blackberries in 1942, and the testimony of Defendant's witnesses, conclusively establishes that the berries processed by Defendant in 1942 were a 'light pack'. * * *

"To prove that the formula, used by Plaintiff in ascertaining and determining Defendant's ceiling price for blackberries in 1944, was not a correct one to use, Defendant also introduced evidence to the effect that 27% more berries were placed in the containers used by him in 1944, than in 1942, and argues therefrom that said packs cannot be considered as being the same. At no time has Defendant contested the average drained weight of the blackberries packed by him in 1944, as established by inspection of the United States Department of Agriculture. * * * The average drainweight of the berries after they are processed, no matter how full the containers may have been packed, establishes the grade of the berries according to United States Standard of Grades. Furthermore, under Sec. 1341.365(a) of M.P.R. No. 306, the grade is to be determined 'at the time

807

of shipment' and not at the time of placing the berries in their containers."

 Since the Regulation, in effect, provides that as to blackberries the term "grade" means "commercial grade", the defendant was entitled to have the District Court determine whether his 1942 and 1944 packs were the same on the basis of their "commercial grades". The Price Administrator asserts that the evidence shows that the packs were of the same commercial grade. The defendant contends that uncontradicted evidence in the record conclusively shows that his pack in 1944 was of a different commercial grade than his 1942 pack. But the weight of evidence, even though uncontradicted, and the credibility of the witnesses who gave it are ordinarily for determination by the trier of the facts. See Rasmussen v. Gresly, 8 Cir., 77 F.2d 252, 254; Yutterman v. Sternberg, 8 Cir., 86 F.2d 321, 324, 111 A.L.R. 736; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 440-444.

The questions whether the commercial grading system about which the defendant testified actually existed, and, if so, whether his packs in 1944 and 1942 were of the same commercial grade, were issues of fact for the District Court.

The Price Administrator asserts that the word "grade" as used in the Regulation relates only to quality, and means quality at the time of shipment. We think that it cannot be said as a matter of law that a commercial grading system might not be based upon the quantity of berries initially placed in the cans. Under the grading system which the defendant asserts he used, the grade at the time of shipment would necessarily be the same as at the time the berries were originally placed in the cans.

Our conclusion is that the issue whether the canned blackberries sold by the defendant in 1944 and 1942 were of the same commercial grade, variety and style should be retried upon the evidence already adduced and such additional competent evidence as the parties may offer upon a retrial. If it shall be determined by the District Court that the method used by the Price Administrator for ascertaining the defendant's maximum prices in 1944 was inapplicable, then the defendant's 1944 maximum prices for berries sold to the Government should, if possible, be determined by any other applicable method authorized by the Regulation.

The judgment is vacated in so far as it relates to the alleged overcharges for blackberries, and the case is remanded to the District Court with directions to set aside its findings and conclusions, and to grant the defendant a new trial upon the present record and such further evidence as the parties may adduce.