**B. M. AYCRIGG et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Ina M. WELLS et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**CROCKER FIRST NATIONAL BANK OF SAN FRANCISCO et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

Nos. 6299, 6309, 6314.

United States District Court
N. D. California, N. D.

June 1, 1954.

See also D.C., 124 F.Supp. 416.

Horace B. Wulff (of Devlin, Diepenbrock & Wulff), Sacramento, Cal., Robt. W. Steel, Marysville, Cal., for plaintiffs.

John E. Lynch, U. S. Atty., San Francisco, Cal., for defendant.

LEMMON, Circuit Judge.

The inundation of Yuba County farms caused by a crevasse in a Feather River levee in 1937 has resulted in an inundation of claims filed in this Court by more than seventy landowners.

The findings of a special master regarding these claims are now before the Court for review.

The crucial question is:

Are those findings "clearly erroneous", and, if so, to what extent?

1. Statement of the Case

On April 24, 1952, this Court handed down an opinion in the above-entitled causes, which had been consolidated for trial, holding that the plaintiffs were entitled to recover damages for the flooding of their lands.

It was determined that the crevasse was caused by the negligence of the Corps of Engineers of the United States in making a cut and backfill, in connection with the removal of a pipe from the east levee of the Feather River, in the west section of Reclamation or Levee District No. 10.

In its conclusions of law, filed on June 17, 1952, the Court held that "the plaintiffs are entitled to a judgment against the defendant for all damages suffered by the plaintiffs * * * proximately caused by said flood * * * and that the trial of said issue of damages shall be held in abeyance until the above entitled court may order such hearing, trial or disposition thereof as it may deem proper."

The pleadings and the facts of these cases, as of April 24, 1952, are fully set forth in the above mentioned opinion, and need not be repeated here.

On July 1, 1952, the Court appointed Robert E. Woodward "as a special master *to find and determine* the nature and the amount of the damages suffered by each of the plaintiffs proximately caused by the flood * * *" (Emphasis supplied.)

The Special Master held hearings in Marysville and Sacramento, California, commencing on July 31, 1952, and ending on March 5, 1953. The transcript of the hearings covers 2571 pages, and the voluminous exhibits include 47 affidavits by landowners.

On July 13, 1953, the Special Master filed a "Report Of Findings Of Damages Suffered By The Plaintiffs" in each of the three above-entitled causes.

On August 29, 1953, the plaintiffs filed "Objections To Report of Special Master", in Nos. 6299 and 6309. No objections were filed in No. 6314.

■ **2. The Referee was Not Compelled to Believe Even Uncontradicted and Unimpeached Testimony as to Value**

In their opening brief, the plaintiffs assert:

> "The evidence relative to the damage and/or loss of personal property and improvements upon real property, adduced in plaintiffs' case and which the defendant elected not to try to contradict and which remained uncontradicted and unimpeached, is conclusive upon the Master where the same is not improbable and unreasonable."

The Court does not believe that this is a correct statement of the law.

In Rule 53(e) (2) of the Federal Rules of Civil Procedure, 28 U.S.C.A., the following provision appears:

> "(2) *In Non-Jury Actions.* In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous."

The general rule and some of its many exceptions were thus stated by Mr. Justice Field in the leading case of Quock Ting v. United States, 1891, 140 U.S. 417, 420–421, 11 S.Ct. 733, 734, 851, 35 L.Ed. 501:

> "Undoubtedly, as a general rule, positive testimony as to a particular fact, uncontradicted by any one, should control the decision of the court; *but that rule admits of many exceptions.* There may be such an inherent improbability in the statements of a witness as to induce the court or jury to disregard his evidence, even in the absence of any direct conflicting testimony. He may be contradicted by the facts he states as completely as by direct adverse testimony; and there may be so many omissions in his account of particular transactions, or of his own conduct, as to discredit his

whole story. *His manner, too, of testifying may give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts.* All these things may properly be considered in determining the weight which should be given to his statements, although there be no adverse verbal testimony adduced." (Emphasis supplied.)

More than sixty years later, the Supreme Court indicated that it has not deviated from the teaching of the Quock Ting case, when, in United States v. Oregon State Medical Society, 1952, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978, it said:

> "As was aptly stated by the New York Court of Appeals, although in a case of a rather different substantive nature: 'Face to face with living witnesses, *the original trier of the facts* holds a position of advantage from which appellate judges are excluded. In doubtful cases, the exercise of his power of observation often proves the most accurate method of ascertaining the truth. * * * How can we say the judge is wrong? We never saw the witnesses. * * * To the sophistication and sagacity of the trial judge the law confides the duty of appraisal.' Boyd v. Boyd, 252 N.Y. 422, 429, 169 N.E. 632, 634." (Emphasis supplied.)

Our Court of Appeals has pointed out another exception—apposite here—to the rule that "uncontradicted and unimpeached" evidence is conclusive upon "the trier of fact". In Southern Pacific Co. v. Hanlon, 9 Cir., 1925, 9 F.2d 294, 296, Judge Rudkin said:

> "It must be remembered that the witness by whom it was sought to prove the justification or excuse was the negligent party, if there was any negligence, and he was also an *interested* party to the extent, at least, that he might jeopardize his position with the company if he stopped a passenger train in this

manner without any excuse or justification therefor. Under such circumstances we think the question of his credibility and the weight of his testimony *was for the jury alone.*" (Emphasis supplied.)

Our Court of Appeals then quoted from the passage from the Quock Ting case, supra, already copied hereinabove, and also approved of the following language in Elwood v. Western Union Telegraph Co., 45 N.Y. 549, 553, 6 Am.Rep. 140:

"The witnesses, though unimpeached, may have such an *interest* in the question at issue as to affect their credibility." (Emphasis supplied.)

In Quon v. Niagara Fire Ins. Co., 9 Cir., 1951, 190 F.2d 257, 259, our Court of Appeals observed:

"In any event, it is not true that *the trier of the fact* is bound to find in accordance with the statement of one witness or any number of witnesses which do not satisfy his mind. This is a stock instruction to juries. The burden of proof was on appellant. If the testimony produced lacked credibility, it was not proof even if *uncontradicted.*" (Emphasis supplied.)[1]

The foregoing principles apply to testimony regarding *value.* In Clark Hardware Co. v. Sauve, 8 Cir., 1915, 220 F. 102, 103, the Court said:

"Witnesses testified that in their opinion the property ordered sold would not bring enough to pay the liens thereon; but the lower court was not bound by the opinions of these witnesses, *even if uncontradicted.*" (Emphasis supplied.)

It will be observed that in the cases quoted or cited above, the courts did not attempt any distinction between the power of juries, judges, referees, special masters, commissioners, administrative boards, or any other "triers of fact", in the matter of determining the credibility of witnesses, whether such witnesses were contradicted or uncontradicted. Indeed, it would be a perversion of the judicial process if the rule were otherwise: the parties would be put to a needless expense if a special master's judgment as to the credibility of witnesses whom he had seen and heard could be nullified except for cogent reasons by a reviewing tribunal that had nothing but the cold record before it. A special master is not a court reporter: his duty is not merely to listen to testimony and transmit it to the judge for what it is worth: he has the added duty of *assessing and evaluating* the evidence. If he disbelieves it for any reason, he can and should disregard it.

If it be objected that some of the cases quoted or cited dealt only with the weight to be given to the findings of a *court* or to the verdict of a *jury*, the short answer is the following quotation from Pallma v. Fox, 2 Cir., 1950, 182 F. 2d 895, 900, referred to by the plaintiffs themselves:

"We do not forget what we have so often said, *and what indeed Rule 53(e)(2)* (supra) * * * *makes peremptory;* i. e., that a master's findings are as *conclusive upon the district court as that court's findings are conclusive upon us.* Nevertheless some review is always open; and it extends as much to untenable inferences from conceded evidences as to the credibility of testimony." (Emphasis supplied.)

This Court is quite aware that it has the *power* to revise the Master's findings, even when the question is one of credibility of witnesses: the point here being made is that, in the instant case, the

---

1. See also Spiro State Bank v. Bankers' Nat. Life Ins. Co., 8 Cir., 1934, 69 F. 2d 185, 188; Elzig v. Gudwangen, 8 Cir., 1937, 91 F.2d 434, 440–443 (containing an excellent survey of the jurisprudence on the subject); Chamberlain v. Fleming, 8 Cir., 1947, 160 F.2d 804, 807 (Credibility of witnesses, even if they are uncontradicted, is for "the trier of the facts"). For a recent statement regarding the weight that should be accorded to a master's findings generally, see United States v. Waymire, 10 Cir., 1953, 202 F.2d 550, 553.

Court is not persuaded that it should disturb the Master's findings except in the respects hereinafter noted.

So far the Court has considered only the Federal rule regarding the power and the duty of a trier of fact with respect to uncontradicted testimony that he does not believe. A similar doctrine prevails in the courts of California and of other states, particularly with regard to questions of *value*.

In Langley v. Pacific Gas & Electric Co., 1953, 41 Cal.App.2d 655, 262 P.2d 846, 851, the Supreme Court of California said:

> "Although plaintiff's testimony was the only evidence concerning the value of the fish, the jury was the sole judge of his credibility and should have been left free to disbelieve him. Blank v. Coffin, 20 Cal.2d 457, 461, 126 P.2d 868."

In In re Estate of Braue, 1941, 45 Cal. App.2d 502, 506–507, 114 P.2d 386, 388, the following language was used:

> "Of course, it is a general rule that *the trier of the facts* is the sole judge of the credibility of the witnesses, and may generally disregard *even uncontradicted evidence*. Kelly v. Jones, 290 Ill. 375, 125 N.E. 334, 8 A.L.R. 796." (Emphasis supplied.)

A witness' manner on the stand has been recognized by California courts as one of the imponderables that can be best evaluated by the trier of facts. In Michener v. Hutton, 1928, 203 Cal. 604, 612, 265 P. 238, 241, 59 A.L.R. 480, it was pointed out:

> " 'His manner, too, of testifying *may* give rise to doubts of his sincerity, and create the impression that he is giving a wrong coloring to material facts. All these things may properly be considered in determining the weight which should be given to his statements, *although there be no adverse verbal testimony adduced.*' " (Emphasis supplied.)[2]

### 3. The Testimony of the Experts

■ The exception to the rule regarding uncontradicted witnesses applies with peculiar force to expert testimony. In Sartor v. Arkansas Natural Gas Corporation, 1944, 321 U.S. 620, 627–628, 64 S.Ct. 724, 729, 88 L.Ed. 967, the Court reviewed the law on the subject:

> "In considering the testimony of expert witnesses as to the value of gas leases, this Court through Mr. Justice Cardozo has said: 'If they have any probative effect, it is that of expressions of opinion by men familiar with the gas business and its opportunities for profit. But plainly opinions thus offered, even if entitled to some weight, have no such conclusive force that there is error of law in refusing to follow them. This is true of opinion evidence generally, whether addressed to a jury * * * or to a judge * * * or to a statutory board.' (Cases cited.) The rule has been stated 'that. if the court admits the testimony, then it is for the jury to decide whether any, and if any what, weight is to be given to the testimony.' (Case cited.) '* * * the jury, *even if such testimony be uncontradicted,* may exercise their independent judgment.' (Case cited.) '* * * the mere fact that the witness is interested in the result of

2. See also Caldwell v. Weiner, 1928, 203 Cal. 543, 546, 264 P. 1100; Travis Glass Co. v. Ibbetson, 1921, 186 Cal. 724, 727–728, 200 P. 595; Richey v. Butler, 1919, 40 Cal.App. 314, 318, 180 P. 652; Dierks v. Newsom, 1920, 49 Cal.App. 789, 793–794, 194 P. 518; Simon Newman Co. v. Woods, 1927, 85 Cal.App. 360, 368, 259 P. 460; Worthington v. Peoples State Bank, 1930, 106 Cal.App. 238, 241–242, 288 P. 1086; First National Bank of Petersburg, Ill. v. Shipley, 1930, 109 Cal. App. 194, 200, 292 P. 996; Dickey v. Kuhn, 1932, 125 Cal.App. 68, 71, 13 P. 2d 834; Lejeune v. General Petroleum Corporation, 1932, 128 Cal.App. 404, 416–417, 18 P.2d 429; Whitaker v. Whitaker, 1934, 137 Cal.App. 396, 401–402, 30 P.2d 538; Vasiljavich v. Radanovich, 1934, 138 Cal.App. 97, 100, 31 P.2d 802; Hanlon v. Western Loan & Building Co., 1941, 46 Cal.App.2d 580, 595, 116 P.2d 465; Morris v. E. I. Du Pont de Nemours & Co., 1940, 346 Mo. 126, 139 S. W.2d 984, 129 A.L.R. 352, 356; 32 C.J.S., Evidence, § 1038, pp. 1093–1096.

the suit is deemed sufficient to require the credibility of his testimony to be submitted to the jury as a question of fact.' (Case cited.)" (Emphasis supplied.)

California has the same rule. It was thus expressed in Zimmer v. Kilborn, 1913, 165 Cal. 523, 525, 132 P. 1026:

> "The fact that the defendant offered no evidence to contradict that of the attorneys who testified regarding the value of the services rendered by plaintiff's assignors did not prevent the jurors from considering the matter in the light of their own experience nor cut them off from the right to return a verdict in favor of plaintiff for a sum less than that mentioned by any witness if, in their discretion, they believed the amount returned by their verdict a sufficient compensation for the work performed."

In 32 C.J.S., Evidence, § 567, pp. 378–379, we find the norm for opinion evidence thus stated:

> "The weight to be given to opinion evidence *is, within the bounds* of reason, entirely a question for the determination of the jury, the court when trying a question of fact, *or other trier of the facts,* and, as a general rule, subject in some jurisdictions to an exception where the matter is such that the jury cannot be assumed to be able to form a correct opinion of their own, * * * opinion evidence is not conclusive, *even though uncontroverted and unanimous.*" (Emphasis supplied.)[3]

Similarly, the trier of fact is accorded wide leeway in his determination of the qualifications of persons offered as expert witnesses. The plaintiffs complain that the defendant's experts, to whose qualifications the former objected before the referee, failed to meet the "minimal requirements" of "(1) the personal knowledge of the witness of property and of values in the neighborhood involved as of the critical valuation date;

(2) the personal knowledge of the witness of the specific property being appraised".

In the first place, it should be observed that these so-called "minimal requirements" no longer prevail—if they have ever prevailed—either in this State or in this Circuit.

In Sacramento Suburban Fruit Lands Co. v. La Gue, 9 Cir., 1930, 40 F.2d 897, 899, Judge Dietrich said:

> "The fact that the witness did not have direct knowledge of the land or of the enterprise at the time of the sale affects the weight rather than the competency of his testimony. (Case cited.)"

Similarly, in Brill v. Mushinsky, 1952, 90 U.S.App.D.C. 132, 194 F.2d 158, 159–160, the doctrine was thus stated:

> "It is not necessary that an expert witness show that he has inspected the property at the date as of which evaluation is to be made, in order to qualify him to express an opinion. More frequently than not, an appraisal contemporaneous with the valuation date cannot be had, and *retrospective appraisals* are of necessity admitted. The weight to be given the opinion of the witness was a matter for the argument of counsel and the determination of the jury, but clearly, we think, the witness was qualified to express an opinion." (Emphasis supplied.)

The Sacramento Suburban Fruit Lands Co. case, supra, was cited with approval in Mayers v. Alexander, 1946, 73 Cal.App.2d 752, 761–762, 167 P.2d 818, 823, in which it was said:

> "The fact that the witness did not actually see the property in August, 1943, might affect the weight, but not the admissibility, of his testimony. (Cases cited.)"

And in 159 A.L.R. 43 we find the following:

> "In general it is no objection to the competency of a real-estate

3. See also 22 C.J. Section 823, Pages 728–731.

broker or dealer that he has never bought or sold comparable property in the vicinity of the property concerned, if he has otherwise become familiar with values there. His exclusion on that ground alone is reversible error. (Case cited.)"

In addition, the plaintiffs "submit that any fair reading of the testimony of the witnesses Huffman and Galloway (the defendant's experts) will reveal innumerable instances of violations of the hearsay rule."

The plaintiffs have lost sight, however, of the fact that in dealing with expert witnesses, courts are not hampered by the hearsay rule.

Chief Judge Parker has elaborated upon this exception in United States v. 5139.5 Acres of Land, etc., 4 Cir., 1952, 200 F.2d 659, 661–662:

"One of the witnesses for the government who had testified as an expert was asked as to sales of similar lands in the community near the time of the condemnation which he had taken into consideration in arriving at his estimate of value. He proposed to testify as to a number of sales which he had learned of in his investigation and which he had verified by examination of the land records in the county. This testimony was excluded because the records were not produced or the persons who had participated in the sales called as witnesses. This, we think, was error. While the admission of testimony of this sort was a matter very largely within the sound discretion of the trial judge, the exclusion here rested, not upon a sound exercise of that discretion, but upon an erroneous application of the hearsay and best evidence rules. The witness within reasonable bounds should have been allowed to give the jury the facts upon which his opinion as to value was based; and it would unduly hamper the production of such testimony and needlessly prolong the trial to require that the sales be proved with the particularity that would be necessary in suits to enforce the contracts relating thereto. The hearsay and best evidence rules are important, but they should not be applied to prevent an expert witness giving in a reasonable way the basis of his opinion. * * *

* * * * *

"* * * If the expert has made careful inquiry into the facts, he should be allowed to give them as the basis of the opinion he has expressed."

A similar rule prevails in California. In McElligott v. Freeland, 1934, 139 Cal. App. 143, 157–158, 33 P.2d 430, 436, the Court said:

"However, it is established that a witness who is called to testify regarding the value of property should so far as is practicable, detail the facts upon which his conclusion or judgment is based *even though the facts upon which he relies would be incompetent to affect value in the particular case and even though the facts which form the basis of his conclusion may have been derived from inquiries made of others or from correspondence.* (22 C.J. p. 575.) This principle is exemplified in cases where an expert is permitted to give an opinion as to value which is based entirely on knowledge gained from inadmissible sources. (Cases cited.) As was remarked by Holmes, C. J., in National Bank of Commerce v. City of New Bedford, 175 Mass. 257, 56 N.E. 288, 290: 'An expert may testify to value, although his knowledge of details is chiefly derived from inadmissible sources, because he gives the sanction of his general experience.'" (Emphasis supplied.)[4]

4. See also Glantz v. Freedman, 1929, 100 Cal.App. 611, 614, 280 P. 704; 32 C.J.S., Evidence, § 545, p. 293.

■ Finally, it should be borne in mind that the qualifications of an expert witness are to be determined by the trier of fact, and the latter's ruling will not be disturbed unless "clearly erroneous."

Here again the jurisprudence of California and that of the Federal system are in complete agreement.

In Inland & Seaboard Coasting Co. v. Tolson, 1891, 139 U.S. 551, 559, 11 S.Ct. 653, 656, 35 L.Ed. 270, the Supreme Court used the following language:

> "Whether a witness is shown to be qualified to testify to any matter of opinion is always a preliminary question for the judge presiding at the trial, and his decision thereon is conclusive, unless clearly erroneous as matter of law."

In California, the Supreme Court has thus expressed the rule, in the recent case of Sinz v. Owens, 1949, 33 Cal.2d 749, 755-756, 205 P.2d 3, 6, 8 A.L.R.2d 757:

> "Although this evidence is somewhat vague, the qualification of an expert witness is a question for the sound discretion of the trial court and its ruling will not be disturbed upon appeal unless a clear abuse of it is shown. (Cases cited.)"[5]

Both Huffman and Gallaway testified at length regarding their respective general qualifications as real estate experts, as well as regarding their special preparation for their testimony in the instant case. Without detailing the evidence here, this Court is amply satisfied that both these witnesses established their general and special qualifications.

After reviewing the entire record in this case, therefore, this Court is of the opinion that, with the exceptions hereinafter to be discussed, the Findings of the Special Master are not "clearly erroneous".

4. The Residuum of Error

■ There now remain to be considered a number of typographical, factual, and legal errors in the Special Master's "Report Of Findings" in Case No. 6299.

*(a) Payment By An Insurance Company Does Not Preclude The Wronged Party From Also Recovering From The Wrongdoer.*

According to the testimony before the Master, a "flood of water" from the crevasse in question "slammed" the cottage of Bernard Boatsman, one of the plaintiffs, "against the big house", which was Boatsman's residence, and some wiring caused both buildings to be destroyed by fire. It is not denied that the insurance company paid Boatsman $6,285.22. This represented approximately seventy-five per cent of the market value of the property as it existed on December 11, 1937, since the policy contained a "three-quarter clause". On this basis, the total loss amounted to $8,380.29. The Master allowed Boatsman the sum of $2,550, apparently on the theory that the owner was entitled only to the *difference* between the total loss and the amount paid by the insurance company.

Even on a purely arithmetical basis, the Master seems to have been in error here, since $8,380.29 minus $6,285.22 equals $2,095.07, instead of $2,550.

Quite aside from the mathematics, however, it is clear that the Special Master was in error as a matter of law, in assuming that the owner was entitled only to the *difference* between the total loss and the amount recovered from the insurance company. In California, under such circumstances the owner is entitled to recover the entire amount of his loss.

In Anheuser-Busch, Inc. v. Starley, 1946, 28 Cal.2d 347, 349, 170 P.2d 448, 450, 166 A.L.R. 198, the Supreme Court of California said:

> "Where a person suffers personal injury or property damage by reason of the wrongful act of another, an action against the wrongdoer for the damages suffered is not precluded

---

5. See also Chateaugay Ore & Iron Co. v. Blake, 1892, 144 U.S. 476, 484, 12 S.Ct. 731, 36 L.Ed. 510; United States v. Certain Parcels of Land, 3 Cir., 1944, 145 F.2d 374, 375, 159 A.L.R. 1, 5; 2 Wigmore on Evidence, 3d ed., Section 561, pp. 641-643.

nor is the amount of the damages reduced by the receipt by him of payment for his loss from a source wholly independent of the wrongdoer. (Many cases cited) * * * The most typical case is where the person suffering the damage has procured insurance protecting him against the loss, to which the wrongdoer did not contribute in procuring, and his insurer pays him for the loss suffered." [6]

Boatsman suffered other losses besides that of his two houses. The Master awarded him a total of $6,029.60. To this amount should be added the sum of $5,830.29, or the difference between $8,-380.29, the full amount of the above fire loss, and $2,550, the figure for that loss as allowed by the Master. It is hereby ordered that the Master's report be amended so as to show $11,859.89 as the total that Boatsman is entitled to recover.

### (b) The Almond Trees of Harold Petersen

Harold Petersen, another plaintiff, testified that he had 160 almond trees, and that all of them died from sour sap as a result of the flood in question. The Master's report lists Petersen's loss of almond trees as being 100. Counsel have stipulated that this was an error, by signing a correction made on the report itself. The correct number is 160.

The *money* figure of Petersen's loss, however, was a matter regarding which the parties did not stipulate. The plaintiff's attorneys contend that, "since the Master found that these trees were worth $5.00 each, the award should have been in the sum of $800.00."

Counsel are in error in asserting that the Master found that Petersen's almond trees were worth $5 each. He merely found that the claimant's total loss in almond trees was $500. This figure is supported by the record, being in accordance with the testimony of Huffman. The Court is not disposed to disturb the Master's finding.

### (c) The Flax of Alouis Frandrup

The Special Master found that Alouis Frandrup sustained a loss of $3,152.50 in an item listed as "growing flax". The plaintiffs' brief complains that this finding is not supported by the record, and suggests that the Master's mistake stems from the shorthand reporter's typographical error in transcription.

Walter Frandrup, the son of Alouis Frandrup, testified regarding the extent of his father's flax acreage before the flood. One page of the record originally showed the number of acres so planted as being "120", but the figure "170" appears on two other pages. To clarify this contradiction, counsel have obtained an initialed correction in the transcript, from the shorthand reported herself, showing that the figure "120" should read "170". This Court is convinced that the latter is the correct figure for Frandrup's flax acreage.

Under either numerical hypothesis, however, it is difficult to determine how the Special Master arrived at the figure of $3,152.50. From its own study of the record, the Court is convinced that the correct figure should be $4,442.17, or $1,-289.67 more than the sum allowed by the Master. This would bring the correct total of Frandrup's claim to $12,020.92, instead of $10,731.25, the award by the Special Master.

### (d) Frank Mooney's Dip Repair Plant

The Special Master allowed Frank Mooney $50 for an item of "Dip Plant Repair". Counsel for the plaintiffs assert that the figure is erroneous, again becaue of a typographical lapse. They report that the official reporter caught the mistake, rewrote the page on which it occurred, so as to make the amount read "five hundred dollars", and then inadvertently included in the transcript *both* the original incorrect page and the corrected page. Here again the shorthand reporter has initialed a correction on the transcript page in question, indicating that "five hundred dollars" is the true amount.

---

6. See also Lebet v. Cappobiancho, 38 Cal.App.2d Supp. 771, 772, 102 P.2d 1109.

The Court is convinced that $500 is the accurate figure representing Mooney's expense in overhauling and cleaning his dipping plant. This brings to $13,-605.25 the total that is to be awarded to Frank Mooney.

*(e) The Reissinger Barley Crop*

The Master allowed Bertha M. Reissinger, now deceased, the sum of $1,044.-95 for "barley crop". The record shows that Alouis Frandrup, supra, had 38 acres planted to barley on property belonging to Mrs. Reissinger, under an arrangement whereby he would receive two-thirds of the gross proceeds of the crop, and Mrs. Reissinger one-third. Counsel for the plaintiffs themselves point out that this figure was "nearly three times as much as the record disclosed was the extent of the loss". It is agreed that the correct figure should be $354.66. This correction brings the total Reissinger award to $5,800.06.

5. Conclusion

For the foregoing reasons, the Reports of the Special Master in all three cases, except for the corrections hereinabove noted as to the Report in Case No. 6299, are hereby approved, and, as thus amended, are adopted as the Findings of Fact and Conclusions of Law of this Court.